# Wiggins *v.* Columbian Fireproofing Company et al., Appellants.

*Contracts—Building contracts—Floors—Carrying capacity—Estimate —Guarantee—Architect—Final certificate—Leases.*

1. Where an estate owns certain store properties which are destroyed by fire, and after the fire gives a lease to the then tenants for a building to be erected, employs an architect for the new building, and enters into a written contract with a builder to construct the building according to plans and specifications, the floors to be according to the "slow burning" plan, and after the work is commenced the owner decides to change the floors to a patented concrete plan, which matter is

referred to the architect, who receives two letters from the patent holders, offering to put in the floors and giving specifications and details of construction and naming a price, the letter also containing a guarantee that the floors would carry a live load of 130 pounds per square foot, and the architect does not accept this offer on behalf of the owners but requests the builders to submit a proposal to change the style of the floors, and the builders reply in writing giving an estimate, but making no reference to the two letters from the patent holders, and the architect writes to the builders authorizing them to proceed as per the estimate "said sum to cover the five floors in accordance with the accompanying letters" of the patent holders, and thereupon the builders enter into a contract with the patent holders to put in their flooring to the "satisfaction, approval and acceptance" of the architect, the contract between the estate and the builders does not include a guarantee that the floors will carry a live load of 130 pounds a square foot and the builders cannot be held liable for a subsequent settling of the floors due to a less live weight capacity, the flooring having been constructed according to the plans, etc., and the approval of the architect having been given after a test had been made in his presence.

2. Where a building contract provides that alterations may be made by the owner subject to the approval of the architect without vitiating the contract, that a final certificate shall be issued by the architect as to the balance due, that such certificate shall be conclusive evidence of the performance of the contract, and that the decision of the architect shall be final and binding on all parties, the final certificate of the architect is a conclusive decision that the contractors have properly discharged their duties and complied with their contract.

*Equity—Equity jurisdiction—Landlord and tenant—Multiplicity of suits—Trial by jury—Demurrer—Answer—Jurisdiction—Waiver.*

3. Where, in such case, the estate sues the tenant for rent retained as damages, and the patent holders sue the builders for withholding a balance due for constructing the floors, and the estate sues the builders to recover the cost of strengthening the floors and for the rent retained by the tenants, and the estate also sues the architect, a bill filed by the builders against the estate, the tenants, the patent holders, and the architect, praying that a determination of the respective liabilities of all the parties and the enjoining of the suits at law against the builders will be dismissed as against the tenants, for the reason that the plaintiffs and the other defendants have no real concern with the points in dispute between the tenants and their landlord, and those questions in no way so intermingle with the questions in controversy between the other parties as to give any sufficient reason why they should be drawn out of their regular course at common law.

4. The tenants in such a proceeding will not be held to have submitted themselves to the jurisdiction of the court, although they filed no demurrer, where in their answer they state that they had no interest in the litigation, except as to the rental, and as to this they were entitled to trial by jury, and they further in their answer pray that they might be permitted to avail themselves "of all matters of defense in law of which they might avail themselves by demurrer or plea in bar, with the same force and effect as though they had filed a separate demurrer or plea in bar," and where it further appears that almost two years before the final decree they moved to dismiss the bill as to them, demanding trial by jury and again at the hearing raised the point that the bill should be dismissed as to them because of want of jurisdiction.

Argued Jan. 5, 1910. Appeals, No. 207, Jan. T., 1909, by Sarah Harrison and Theodore L. Harrison, Executors, and the Philadelphia Trust, Safe Deposit & Insurance Company, Coexecutor and Trustee, and No. 220, Jan. T., 1909, by Showell & Fryer, Ltd., from decree of C. P. No. 4, Phila. Co., June T., 1905, No. 5,214, on bill in equity in case of John R. Wiggins, W. H. Walls and F. K. Worley, trading as John R. Wiggins & Co., v. Columbian Fireproofing Company; Sarah Harrison and Theodore L. Harrison, Executors under the Will of Joseph Harrison, Jr., deceased, and the Philadelphia Trust, Safe Deposit & Insurance Company, Coexecutor and Trustee under said Will; Showel & Fryer, Ltd., and Edgar V. Seeler. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed with a modification.

Bill in equity. Before WILLSON, P. J.
The facts appear in the opinion of the Supreme Court.

*Error assigned* in each appeal was the decree of the court.

*Frank P. Pritchard,* with him *Townsend, Elliott & Townsend,* for appellants in appeal, No. 207, and for Harrison Estate, appellees, in appeal, No. 220.

*B. F. Pepper,* with him *G. W. Pepper,* for Edgar V. Seeler.

*Joseph DeF. Junkin,* for Showell & Fryer, appellees in appeal, No. 207, and appellants in appeal, No. 220.—The court

was without jurisdiction to entertain the bill against these defendants: Wiser's App., 9 W. N. C. 508; Silvis v. Clous, 1 Pa. Superior Ct. 41; Adams's App., 113 Pa. 449; Klein v. Bank, 44 Legal Int. 144; Shillito v. Shillito, 160 Pa. 167.

There is no such multiplicity of suits with regard to Showell & Fryer as will give in this proceeding any jurisdiction as to them: Hale v. Allinson, 188 U. S. 56 (23 Sup. Ct. Repr. 244); Webb v. Parks, 110 Ga. 639 (36 S. E. Repr. 70); North Penna. Coal Co. v. Snowden, 42 Pa. 488; Norris's App., 64 Pa. 275.

*Alex. Simpson, Jr.*, with him *Ernest L. Tustin*, for John R. Wiggins & Co., appellees.—A court of equity can properly and most efficiently deal with the matters involved in the various litigations referred to: Brush Elec. Light Co.'s App., 114 Pa. 574; Bierbower's App., 107 Pa. 14; Penna. R. R. Co. v. Bogert, 209 Pa. 589; Corbe v. Burkert, 33 Pa. Superior Ct. 317; Simpson v. Summerville, 30 Pa. Superior Ct. 17; McGowin v. Remington, 12 Pa. 56; Ahl's App., 129 Pa. 49; Hanna v. Clark, 189 Pa. 321.

OPINION BY MR. JUSTICE MOSCHZISKER, March 28, 1910:

The estate of Joseph Harrison, Jr., owned certain store properties which were destroyed by fire. Showell & Fryer, Limited, were the tenants, and after the fire they were given another lease for a building to be erected. E. V. Seeler was employed as the architect for the new building. The proper representatives of the Harrison estate entered into a written contract with John R. Wiggins & Co., to construct the building according to certain plans and specifications. The floors were to be according to the "slow burning" plan. After the work was commenced the owner decided to change the floors to a patented concrete plan known as "Columbian Fire Proofing." This matter was referred to the architect, and he received two letters from the Columbian Fireproofing Company offering to put in the floors, giving specifications and details of construction and naming a price. These letters also tendered a guarantee that the floors would be thoroughly first class in every particular and would carry a live load of 130 lbs.

per square foot.  The architect did not accept this offer on behalf of the owners, but requested Wiggins & Co., to submit a proposal to make the change to the Columbian system. Wiggins & Co. replied in writing giving an estimate, but making no reference to the two letters from the Columbian company.  The architect wrote to Wiggins & Co., authorizing them to proceed at once with the substitution of the Columbian system as per their estimate, "said sum to cover the five floors in accordance with the accompanying letters of the Columbian Fireproofing Company."  Thereupon Wiggins & Co. entered into a contract with the Columbian company to put in their flooring to the "satisfaction, approval and acceptance of Edgar V. Seeler, architect of said building."  After the work was completed a test was made in the presence of the architect.  Mr. Seeler was satisfied with the test and gave his final certificate to the owners, who thereupon sent a check to him for the balance of the contract price, and this was turned over to Wiggins & Co.  The tenant went into occupancy of the building.  The Columbian company complained to the architect that the floors were being overloaded, causing a deflection of a girder.  Seeler visited the building, but did not notice anything "amiss with the floors."  Three days later the owners received notice that the floors were settling and notified the architect.  On inspection he found that the floors had deflected, and promptly notified Wiggins & Co. that another test would have to be made.  The owners had another test made by cutting a panel in the concrete floor area and loading this isolated portion.  The result showed a live load capacity of only fifty pounds instead of 130 pounds.  An arrangement was then made that Wiggins & Co., without prejudice to anyone's rights, should strengthen the floor for an additional sum of $7,800, which was paid to them.  The tenants retained and refused to pay over $11,000 rent, claiming that amount as damages.  The Harrison estate sued Showell and Fryer for this rent.  Wiggins & Co. refused to pay the Columbian company the balance due to it for constructing the floors, and they brought suit against Wiggins & Co.  The Harrison estate sued Wiggins & Co. to recover the price paid

to them for strengthening the floors and the rent retained by the tenants; and they also sued Seeler, the architect. Whereupon, Wiggins & Co. filed a bill against the Harrison estate, owners, Showell & Fryer, tenants, the Columbian company, subcontractors, and Seeler, architect, praying that each of the defendants should answer; that the first two should make discovery of the terms and conditions of the lease between them and of all their claims relative to the rent; that the first and fourth should make discovery of the terms of the contract between them; that the respective liabilities of all the parties should be determined and a decree entered requiring such payments to be made by one to the other as should be found to be just and equitable: and that the first and third of the defendants be enjoined from prosecuting their suits against the plaintiffs. When the bill came on for hearing, it was decreed: first, that Wiggins & Co. pay the Columbian company the full sum claimed by them; second, that Showell & Fryer pay to the Harrison estate a certain sum for rent; third, that the estate pay to Seeler the balance due to him for commissions as architect; fourth, that the estate was not entitled to recover anything from Seeler; fifth, that the estate was not entitled to recover anything from Wiggins & Co.; sixth, the Columbian company was restrained from further prosecuting its suit against Wiggins & Co.; seventh, the estate was restrained from further prosecuting their action against Wiggins & Co.; eighth, it was ordered that each party pay his own costs.

Both Showell & Fryer and the representatives of the Harrison estate have appealed. The first of the appeals suggests many questions; but the only one which it is important to consider arises out of the complaint that the court below fell into error in assuming jurisdiction of the bill as to the appellants, as they were thereby deprived of their right to trial by jury. The contention on the other side is that all of the matters in dispute were so interlaced that it was practically impossible, or certainly difficult and inconvenient, to dispose of them separately, and on that ground and to avoid a multiplicity of suits, the bill should be sustained. Further, that no demurrer having been filed and the trial having been had, it is now too late to

raise the question.  Although appellants did not file a demurrer, in their answer, after making the discovery prayed for, they set up that: "They have no further interest in, or liability to the complainants as to the matters complained of as set forth in their bill, and cannot be compelled to have their rights and liabilities as to the said rental determined in this proceeding; that they are entitled to their trial by jury."  The answer ends with a prayer that they may be permitted to avail themselves "of all matters of defense in law of which they might avail themselves by demurrer or plea in bar with the same force and effect as though they had filed a separate demurrer or plea in bar."  In June, 1907, at least seven months before the adjudication, and almost two years before the final decree, they filed a motion to dismiss the bill as to them, averring that they had made full discovery as to all matters concerning which they had been interrogated, and demanding a trial by jury of the questions in controversy between them and their landlords, separate and apart from any disputes which their landlords might have with others concerning the erection and construction of the building.  At the trial the appellants again raised the point that the bill should be dismissed as to them because of the want of jurisdiction.  On this state of facts it cannot be said that the appellants submitted themselves to the jurisdiction of the court.  Whenever an attempt is made to remove a pending cause from the common law into equity on the ground of its inseparable connection with other litigation or to avoid multiplicity of suits, if the case is not brought directly within the principle of a preceding authority, it must be decided upon its own merits, by considering the points involved, the adequacy of the legal remedy, the substantial convenience to be served, the relations of the parties to one another, and the results that would follow if jurisdiction were assumed or denied, and by keeping constantly in mind the right to have controverted questions of fact decided by a jury in all cases ordinarily triable according to the course of the common law, unless there is present a good and substantial recognized reason why the equitable remedy should prevail.  The plaintiff and other defendants had no real concern with the points in

dispute between these appellants and their landlords, and those questions in no way so intermingled with the questions in controversy between these other parties as to give any sufficient reason why they should be drawn out of their regular course at common law into this equity proceeding. There was no inadequacy in the remedy at law which had been invoked against the appellants, nor was there any great convenience to be served, or inconvenience to be avoided, by forcing their case into equity. The bill should have been dismissed as to these appellants.

In the other appeal, the representatives of the Harrison estate assign twenty errors, but the view which we have just indicated in disposing of the first appeal makes it unnecessary to discuss many of these assignments. These appellants contend that the court below fell into error in not finding that the contract between them and Wiggins & Co. included a guarantee that the floors would have a live weight capacity of 130 pounds to the square foot, and in not holding Wiggins & Co. liable to them for a breach of that guarantee. The trial judge held that there was no guarantee that the floors would bear any particular weight; that the first test was justifiably regarded by the architect as a sufficient one, and it was in point of fact a more proper test than the second; further, that the final certificate of the architect was in the nature of an award which Wiggins & Co. were entitled to stand upon; and that Wiggins & Co. had fully performed their contract in accordance with its terms. The learned court below was entirely right in its construction of the contract between Wiggins & Co. and the appellants when it said: "I do not consider that the contractors guaranteed that the floors would bear any particular weight, or that they undertook to do anything else than to construct those floors according to the particular system, as specified, subject to the approval of the architect and the building inspectors." As to this the appellants contend that the letter from the architect to Wiggins & Co. wherein it is stated, "said sum to cover five floors in accordance with the accompanying letters of the Columbian Fireproofing Company under date of May 7th and June 7th," in view of the letters referred to, which read, "We

guarantee our floors to carry the loads required and to be thoroughly first class in every respect," and, " In this proposition we guarantee to carry a live load of 130 pounds per square foot to be tested according to the building laws of the City of Philadelphia," must be taken as imposing these guarantees upon Wiggins & Co. Under the surrounding circumstances such a construction would be unwarranted. The plain meaning of the letter from the architect to Wiggins & Co. was that for the sum named they were to construct all five floors of the building in accordance with the specifications and details set forth in the letters from the Columbian company, and not that they were to assume the guarantee offered by the Columbian company. The suggestion that the Columbian flooring should be substituted for the "slow burning" came entirely from the appellants. They dealt with the Columbian company and the correspondence was entirely between their architect and that concern. If they desired the guarantee offered by the Columbian company in its letters, they should have gone about securing it in a proper way; or if they desired the guarantee of Wiggins & Co., they should have requested it; and if Wiggins & Co. had seen fit to give a guarantee, they could have protected themselves by a counter guarantee from the Columbian company. As it was, there was no guarantee of a particular load bearing capacity by anyone.

We have carefully examined all of the evidence bearing on the question of the tests, and we cannot say that the trial judge was wrong in his conclusion that the architect was justified in treating the first test as a proper and sufficient one. In the language of the court below, the architect's " decision was based upon evidence in regard to the strength of the floors that he deemed sufficient and convincing. The building inspectors made no objection to the work, and by their allowing the building to be occupied, they may be regarded as satisfied with it."

The contract for the original erection is dated May 22, 1902, and provides: "The owner, subject to the approval of the architect, may make alterations, which shall be acceded to by the contractor, without in any way violating or vitiating the

contract," and, "When the work embraced in this contract is completed to the satisfaction of the architect . . . . there shall be issued by the architect a final certificate of the balance due the contractor. . ., . No certificate given or payment made under this contract except the final certificate or final payment shall be conclusive evidence of the performance of the contract," and, "The decision of the architect . . . . as to any question arising out of the case shall be final and binding on all parties to this contract." The trial judge properly ruled that the final certificate of the architect was a conclusive decision that the contractors had properly discharged their duties and complied with their contract: Sicilian Asphalt Paving Co. v. Williamsport, 186 Pa. 256.

As well stated by the learned court below, the losses in this case "have occurred by an unusual combination of circumstances exhibiting not negligence or misconduct so much as ignorance and timidity in connection with the use of structural devices that were not fully understood and trusted." Be this as it may, the appellants omitted to exact any guarantee of a particular weight capacity, and the floors were constructed in accordance with the plans and specifications dictated by them; if the floors failed to come up to their expectations and to meet the needs of the building, the contractors are not to be blamed: Filbert v. Phila., 181 Pa. 530; Harlow v. Homestead, 194 Pa. 57. But the appellants say, if the estate has no recourse against the builders, it should be allowed to recover its losses against the architect. The trial judge has found that the architect was in no way responsible for the substitution of the Columbian flooring; that he was warranted in believing that the building was intended for use only as a retail grocery store, and not as a warehouse; that the test of the floor was reasonable and made in good faith, and its result was not such as to justify a rejection or impose upon the architect the duty of making another test before final acceptance; that he had fully performed all of the obligations of his employment and was guilty of no negligence in the discharge of his professional duty or in giving the final certificate and making the final payment to Wiggins & Co. The architect was no more responsible

than the contractors for the unfortunate losses which the owners have been obliged to bear. The appellants indulged in an experiment which did not prove an entire success, and they alone must bear the consequent loss and expense.

None of the parties defendant excepting Showell & Fryer has raised any question as to the jurisdiction of the court. On the questions between the plaintiffs and the other defendants, a careful reading of the testimony and a consideration of all the documentary proofs fail to show any manifest error in the findings of the trial judge, or in the conclusions of law based thereon.

The seventh assignment of error in the first appeal, to the effect "That the bill should be dismissed as to Showell & Fryer, because of want of equitable jurisdiction over them" is sustained, and they are discharged with their costs; without prejudice to the right of the proper representatives of the Harrison estate to proceed with their action at law against these appellants.

In the appeal of the representatives of the Harrison estate we do not pass upon the assignments of error going to the questions between them and Showell & Fryer. The other assignments are overruled in accordance with the views which we have expressed in this opinion.

The final decree of the court below is affirmed with the modification that the third paragraph adjusting the accounts between the Harrison estate and Showell & Fryer is stricken therefrom. The costs of the defendants Showell & Fryer are to be paid by the plaintiffs, John R. Wiggins & Co. The costs of the plaintiffs, John R. Wiggins & Co., and the costs of this appeal, other than those incurred by Showell & Fryer, are to be paid by the defendants the representatives of the Harrison estate named upon the record.