SUSQUEHANNA SILK MILLS, Appellant, *v.* FERDINAND JACOBSON and JOSEPH C. JACOBSON, Respondents.

First Department, December 13, 1918.

**Sale — evidence insufficient to establish express warranty.**

In an action for goods sold and delivered, a counterclaim was sought to be sustained upon the sole ground of an express warranty, consisting of an oral statement alleged to have been made by plaintiff's salesman to one of the defendants as an inducement for the purchase, that the goods " are fast color and they don't shrink." Said defendant testified to the conversation constituting the alleged warranty, but his brother, claimed to have been present, was not called as a witness, and there was no explanation why he was not called. It appeared that there was no suggestion of an express warranty in any of the written orders for the goods; that defendants when they first complained of the goods by letter did not even suggest that the purchases were made upon an express warranty, nor did they mention such a warranty in answering the plaintiff's reply.

*Held,* that the defendants failed to establish an express warranty by preponderance of the evidence, and that the verdict is clearly against the weight of the evidence when due consideration is given to the written evidence.

CLARKE, P. J., dissented.

APPEAL by the plaintiff, Susquehanna Silk Mills, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 13th day of February, 1918, dismissing the complaint and awarding judgment on defendants' counterclaim upon the verdict of a jury.

An appeal is also taken from an order entered in said clerk's office on the same day denying plaintiff's motion for a new trial made upon the minutes.

*I. Maurice Wormser* of counsel [*I. Gainsburg*, attorney], for the appellant.

*John Bogart* of counsel [*Abraham P. Wilkes* with him on the brief; *Bogart, Wilkes & Bogart*, attorneys], for the respondents.

SHEARN, J.:

As a counterclaim, the answer alleges that plaintiff represented that the goods were suitable for the manufacture of men's shirts and would not fade or shrink from washing; that the goods were not as represented; that about 350 dozen of the shirts manufactured by the defendants were returned by customers because the shirts shrunk and were otherwise defective, to defendants' damage in the sum of $5,000. The evidence amply sustains defendants' contention that the goods shrunk and faded and were not as alleged to have been represented.

Defendants' counsel upon the trial claimed no implied warranty and the case was submitted to the jury exclusively upon the issue of a breach of an express warranty. This express warranty consisted of an oral statement alleged to have been made by plaintiff's salesman, Eiche, to Joseph C. Jacobson, one of the defendants, as an inducement for the purchase, that the goods " are fast color, and they don't shrink." It is appellant's contention that the defendants failed to establish this express warranty by a preponderance of the evidence and that the verdict is clearly against the weight of the evidence when due consideration is given to the written evidence.

Joseph C. Jacobson testified to the warranty as follows: " He [Eiche] came up with some samples and said he had something special for the shirt trade, that he had something that was going like wildfire, he had a sample of a new cloth that they got out for the shirting trade that was absolutely fast color, would not shrink, and was the best thing that money could buy." On the occasion of another visit by Eiche a few days after defendants gave the first order, Jacobson testified that Eiche said: " I have got another new one for you. I said, ' what is it,' and he says, ' here is some cloth, but we print, instead of the plain colors we put colored stripes on,

First Department, December, 1918. [Vol. 185.

and it looks very good.' I says, ' let me see it, come on, trot them out and I will look at them,' and they looked good, and I said ' are they fast colors? ' He said, ' the same as the other stuff, Mr. Jacobson, they are fast color, and they don't shrink.' I says, ' well, if that is the case, I will buy them.' " On cross-examination, Jacobson's account of the first interview was materially different. Referring to Eiche, he testified: " He came up with some samples and said he had something new for the shirting line. Q. Something new? A. Something new, that was a big thing, that everybody said was going to be big, and wanted to know whether I was interested, and I said I was, so he showed me some samples, which were these plain colored poplins, and he said the price was 44 cents with six off, and I asked him if they were fast color, if they shrank, and he said they were fast color and they did not shrink. Q. You asked him that? A. Yes. Q. And that was the answer he gave? A. Yes, sir. Q. Who was present at that time? A. My father was in the show room and my brother Harry was in the show room  *  *  *. Q. How big a room is that? A. About one-quarter of the size of this court room." It will be noted that whereas on direct examination Jacobson testified that Eiche volunteered the statement that the goods were absolutely fast color and would not shrink, on cross-examination he testified that the representation came in response to his own questions. The brother, Harry Jacobson, claimed to have been present, was not called as a witness, and there is no explanation why he was not called. The father, Ferdinand Jacobson, was called and his testimony concerning this vital matter of what was said was given in this unsatisfactory and unconvincing manner: " Q. Now, then, your son testified when he was on the witness stand to the conversation that took place between the salesman and himself. You were present throughout that conversation? A. Yes, sir. Q. And you heard what was said between them? A. Yes, sir. Q. And is your memory refreshed as to what was said by your son's testimony this morning and this afternoon? A. Yes, sir. Q. And that is substantially correct? A. Yes, sir." Eiche, the salesman, died before the trial. The foregoing is, therefore, the sole testimony in the case as to whether or not the express warranty was given, for there is

not a shred of written evidence tending to support the claim. In fact, as appellant contends, the written evidence is strongly to the contrary.

In the first place, all of the orders are in writing and there is not a suggestion of an express warranty in any of the orders. Considering the vital importance that Jacobson attached to the alleged oral representation, and that, according to his testimony, he would not have made the purchase but for the representation, it is queer that we find no reference whatever to any claim that the goods ordered were bought subject to an express warranty in any one of the numerous orders. If it be true that it would be an unusual thing for the defendants to make any note of the warranty in the orders, it is certainly significant that, in a matter that was so vital, no letter was exchanged between these business houses recording the fact that the sale and purchase were subject to an express warranty. The natural inference is that the defendants had no express warranty but were relying upon an implied warranty that the goods were suitable for their purposes, especially as defendants were dealing with a large and important concern which did a business of $15,000,000 a year.

Of greater significance than this, however, is the fact that when the defendants on May 12, 1916, first complained that they were having trouble with the shirts, and notified the plaintiff that the defendants would look to them to make amends " for the shortcomings of these materials," there is not a suggestion in the letter that the purchases were made upon an express warranty. Indeed, the letter concludes: " You sold us these printed striped poplins, with the express understanding that their sale was to be confined to us." When the defendants were stating in the letter the express understanding on which the goods were sold, and when they were already having trouble with the purchasers of the manufactured shirts, it is very significant that no claim whatever was made of an express warranty.

Plaintiff replied to this letter on May 16, 1916, saying: " Yours of the 12th instant received and we have taken note that you say you are having trouble with the goods shrinking and fading. Regarding this we do not see where

we are to blame as there was no guarantee given at the time the goods were sold." Here was the assertion boldly and plainly made by plaintiff that there was no express warranty. Now, if ever, was the time for the defendants to join issue on this and contradict the statement and insist that there was such a warranty. If, in the face of this assertion, the defendants acquiesced in plaintiff's statement, considering the trouble they were having with their goods, it is very difficult to believe that the defendants were relying upon, or that there was, an express warranty. Turning to their reply of May 19, 1916, we find that the defendants state: "You say you give no guarantee; surely, you are not contending that you are making delivery of materials with the understanding that such do not give ordinary wear; whether you give a guarantee, or not, all of our purchases are on the basis that the materials are of a proper standard." In other words, here is no denial of plaintiff's claim, no assertion of a contrary claim, but rather a statement that these goods, like all other goods, are impliedly warranted as suitable for their purpose.

Again, on June 8, 1916, the defendants wrote another letter to the plaintiff, in which they complained of the experience they were having, stated that their loss had already been quite heavy, and that "We apprise you of this, for the responsibility rests with you entirely, through reason of these not being standard goods, and in consequence of which, we propose to make claim upon you, in due time, to cover these losses." Here, again, is no claim of any express warranty, and, instead, the reason for plaintiff's responsibility is stated to be because the goods were not standard goods. The plaintiff replied on June 10, 1916, denying the defendants' right to make any claim on the goods whatsoever. Then on June 14, 1916, when it might be inferred, both from the above state of affairs and from the style of the letters, the controversy had reached defendants' lawyer, Exhibit J is written, in which *for the first time* was there made any claim that there was an express warranty. The matter was stated thus: "The assurances of your representative, were that the material would not shrink; that it was of standard qualities, as we have been accustomed to receiving, from

all the concerns we are doing business with." Even here where the attempt is made to claim an express warranty, it does not conform to the testimony given by the defendants, whose claim is that the warranty was *both* that the material would not shrink and that it would not fade.

Written evidence in such a case is of course entitled to much greater weight than testimony coming from the lips of an interested witness. It is true that the jury had before them Mr. Jacobson and that they were the ones to pass upon his credibility. They found him credible, believed his testimony and it stood undenied by any living witness. But the jury had no right to disregard the written evidence, and it was incumbent upon them in reaching their verdict to apply the rule that put upon the defendants the burden of establishing this express warranty by a preponderance of the evidence. It was not enough for the jury to say: " We have heard Mr. Jacobson testify and looked him over and believe that he is telling the truth." The question was whether it appeared from all the evidence in the case that the express warranty was given. The jury, undoubtedly influenced by the fact that the goods were clearly defective, and that the result had been a heavy loss to the defendants, and that Jacobson's testimony was undenied by any other witness, failed to weigh the whole evidence and give due weight to the written evidence. Testing the evidence, as we are bound to do, by reasoning out the inferences that should be drawn from it, and giving the weight that the law and our experience tells us should be given to documents as against the testimony of an interested witness, it is difficult to resist the conclusion that, however honest a man Jacobson may be, the defendants failed to establish the making of an express warranty by a fair preponderance of the evidence, and, indeed, that the weight of the evidence is palpably to the contrary.

Respondents' counsel has argued the matter in his brief as though he was dealing with an implied warranty, but when he stated upon the trial that he claimed no implied warranty, and the case was submitted solely on the basis of an express warranty, it is not permissible to shift his position upon appeal. The only question before us concerns the proof of an express warranty.

Reluctant as I am to interfere with the finding of a jury, I cannot avoid the conclusion that this verdict is clearly against the weight of the evidence and that the judgment and order should be reversed and a new trial ordered, with costs to the appellant to abide event.

LAUGHLIN, DOWLING and SMITH, JJ., concurred; CLARKE, P. J., dissented.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.