# Tate-Jones & Co., Inc., *v.* Union Electric Steel Co., Appellant.

*Contract—Construction most strongly against contractor—Warranty — Contemporaneous parol agreement inducing contract — Waiving defense—Extension of time—Breach—Burden of proof—Furnaces.*

1. A contractor who prepares a contract and submits it to the other party is bound to comply strictly with the provisions con-

tained therein, but, if this is done, he satisfies his obligation, and is not liable for the results obtained, except as expressly or impliedly warranted.

2. Where such a contract fixes the obligation of the seller as to the construction, and also declares that no other understandings existed than those set forth in writing, the stipulation is binding on the purchaser, in the absence of proof of any contemporaneous parol agreement, broadening the responsibility of the seller, which induced the purchaser to accept the proposal.

3. Where several months after furnaces have been installed, but not in operation, under a contract, and a lien has been filed, the purchaser agrees to pay and waives defenses in consideration of an extension of time, and it is also agreed that there should be a reimbursement, if a breach subsequently appeared, and a final refusal to accept the furnaces is not expressed until after nearly seven months of actual operation, the only redress remaining to the purchaser, is to secure an award for a loss which it sustained, if a default on the part of the seller can be shown.

4. In such case the burden of proof is on the purchaser to establish the breach by which he seeks to escape liability.

*Appeals—Evidence—Judgment n. o. v.*

5. On appeal from a judgment n. o. v., all evidence, and reasonable deductions therefrom, must be considered in the light most favorable to defendant.

*Appeals — New trial — Assignments of error — More than one question—Rule 22.*

6. The assignment of error to the refusal to grant a new trial will not be considered, where neither the motion nor reasons therefor are set out in the assignment.

7. A new trial will not be granted by the appellate court where no manifest abuse of discretion is shown by the trial court.

8. Under Rule 22, assignments of error will not be considered which raise more than one question.

*Contract—Words and phrases—"Efficient"—Question of law— Custom—Trade meaning.*

9. The meaning of plain and ordinary words in common use is a question of law for the court.

10. Where the word "efficient" is used in a contract in connection with a guaranty in a sale of machinery, the machine purchased must be held to be "efficient" irrespective of the cost of operating it, unless the contract between the parties provides otherwise, or the word can be shown, in the special instance, to have some different trade meaning.

11. Where a word with a special meaning or a trade phrase appears in a contract, it is competent, if justice so requires, to introduce evidence to show the real sense in which such word or words were used, or in a proper case that they have a generally fixed trade significance.

12. But where a word has a common or generally accepted ordinary meaning, it is supposed to have been so intended, unless it is plain from the context or it is properly made to appear that the word was used in some other sense.

13. Before a usage may be denominated a custom, and bind those in the trade or business to which it refers, the meaning ascribed must be shown to be certain, continuous, uniform and notorious.

*Appeals—Trial—Refusal to send out price statement to jury—Discretion of court.*

14. On appeal the trial court cannot be convicted of error in refusing to send to the jury a statement in evidence setting forth the cost price of various items entering into the contract between the parties.

Argued October 13, 1924. Appeal, No. 80, Oct. T., 1924, by defendant, from judgment of C. P. Allegheny Co., Oct. T., 1922, No. 961, for plaintiff n. o. v. for plaintiff for less amount, in case of Tate-Jones & Co., Inc., v. Union Electric Steel Company. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Scire facias sur mechanics lien. Before SHAFER, P. J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $12,000, on which judgment was subsequently entered for $16,961.24. Defendant appealed.

*Errors assigned* were, inter alia, entry of judgment for plaintiff n. o. v. for plaintiff for less amount, also instructions and rulings referred to in opinion of the Supreme Court, quoting record, and refusal to grant new trial, but not quoting motion or reasons.

*Earl F. Reed,* of *Thorp, Bostwick, Stewart & Reed,* for appellant.—The court improperly entered judgment for the plaintiff n. o. v.

Conflicts in the verbal testimony must be submitted to the jury: Schwarz v. Glenn, 244 Pa. 519; Hewitt v. Pub. Co., 260 Pa. 59.

The existence of nominal damages is sufficient to prevent the entry of judgment n. o. v.: Clark v. Stone Co., 41 Pa. Superior Ct. 34.

The term "efficiently heating billets" is a trade phrase to be applied in its technical sense: Pittsburgh v. O'Neil, 1 Pa. 342; Com. v. Sanderson, 40 Pa. Superior Ct. 416; McDonough v. Jolly Bros., 165 Pa. 542.

After showing that the furnaces did not comply with the guarantee, defendant should have been permitted to show the value of the various units in place: Otis v. Realty Co., 244 Pa. 186; Himes v. Kiehl, 154 Pa. 190; McClintock v. Matlack, 52 Pa. Superior Ct. 266; Seigworth v. Leffel, 76 Pa. 476.

It was prejudicial error to charge the jury that the furnaces had been accepted by virtue of the Sales Act, for said act has no application to proceedings upon a mechanic's lien, the law forbidding the removal of the furnaces: Hartupee v. Pittsburgh, 97 Pa. 107; Miller Lock Co. v. Mfg. Co., 37 Pa. Superior Ct. 585; Stillwell & Bierce Mfg. Co. v. Phelps, 130 U. S. 520.

*Gifford K. Wright,* of *Alter, Wright & Barron,* for appellee, cited: Ridgeway Dynamo & Engine Co. v. Cement Co., 221 Pa. 160; Holcomb & Hoke Mfg. Co. v. Gamba, 80 Pa. Superior Ct. 191.

OPINION BY MR. JUSTICE SADLER, November 24, 1924:

On February 28, 1920, Tate-Jones & Co., Inc., plaintiff, proposed to sell to defendant, for a stipulated price, six furnaces to be used for heating and annealing steel, and its offer was accepted. The seller guaranteed the equipment "to perform the work for which it was intended,"

and that the plant would "maintain uniform and controllable temperatures in working chamber from 1800 to 2300 degrees Fahr., for efficiently heating billets and ingots for forging, of sizes adaptable to the heating chamber of the furnace when properly handled and operated under the conditions specified." The latter provided that oil should be used at a pressure of 25 to 30 pounds per square inch, and compressed air or steam at 20 to 25 pounds, to secure the results intended, except when oils of a standard heavier than that named were employed, in which case the pressure was to be increased and the oil heated. It was set forth that there were no understandings or agreements other than those contained in the written contract.

The work contemplated was completed in January, 1921. Payment was not made as agreed upon, and, in April following, plaintiff filed a mechanic's lien to secure the balance due. Later, on December 1st, an agreement was entered into between the parties, recognizing the validity of the lien, and declaring it not subject to "set-offs, counterclaims or defenses." In consideration of this acknowledgment, the plaintiff extended the time of settlement by permitting payment in three installments, covering eighteen months, with the provision that all should become due if a default occurred as to any. Since the furnaces had not as yet been put in operation by the defendant, it was further provided that plaintiff should "at its own expense, do all such work and furnish all such materials as will be necessary to make them comply with the contract, and will at all times make good its guaranty contained in said contract, which guaranty shall remain in full force and effect and be unaffected by anything herein contained."

The operation of the plant,—which had been in place for nearly a year, though not in actual service, apparently because of lack of business demand,—commenced in January of 1922. With the exception of one furnace, all were made use of until the summer following, when

two were removed, and the others are still in place and at least in part employed in the buyer's business. On July 1st, the first installment, as fixed by the supplementary agreement, became due, and remained unpaid. Ten days later defendant gave notice of the discovery of numerous defects in workmanship and design, and of an inability to secure uniform and controllable temperatures as promised. It was demanded that the necessary alterations be made, or the furnaces taken out and removed. A scire facias was then issued on the mechanic's lien. The affidavit of defense filed denied liability because of the alleged breach of the agreement to make good the guaranty, as set forth in the original contract, setting up, in addition, certain oral representations by the seller as to the amount of work possible to be economically performed if proper operation was had, and claiming damages for loss sustained. On the trial of the issue, the learned court below submitted to the jury the question whether there had been a breach proven, and, if so, what loss, if any, had been suffered. A verdict was rendered for plaintiff in a sum less than that sought to be recovered. Judgment n. o. v. was later entered, on motion of the plaintiff, for the full amount of the claim, and that for a new trial, presented by defendant, overruled. This appeal followed.

It will be remembered that the specifications,—a part of the contract (9 C. J. 737),—were prepared by the plaintiff, submitted to defendant, and the offer accepted. The builder was therefore bound to strictly comply with the provisions set forth in constructing the furnaces, but, if this was done, he satisfied his obligation, and was not liable for results obtained, except as expressly or impliedly warranted: 9 C. J. 746; Filbert v. Phila., 181 Pa. 530; Harlow & Co. v. Homestead Boro., 194 Pa. 57; Wiggins v. Columbian Fire Proofing Co., 227 Pa. 511. In discussing the case the court below said, and the statement is not challenged here: "The defendant gave no evidence tending to show that the furnaces

were not built in accordance with the plans and specifications, but did undertake to show a breach of warranties contained in said contract." Appellant insists that proof of certain defects in building showed the plant to be inefficient, but the question here is whether it would do the work as agreed, under the circumstances expressly defined. And within this complaint comes that directed to construction of the brick arches over the doorway, which, it is insisted, fell an excessive number of times, requiring repairs. It is to be noted that there was no evidence that they were not built according to the accepted plans, and, when broken, and plaintiff notified, the expenses incident to renewal were paid by it.

It further contends that, the designs having been prepared by the plaintiff, there is an additional implied warranty that the work shall be done so that upon completion it may be used satisfactorily and economically, but this is not what the contract provided. In plain words, it fixed the obligation of the seller, and also declared no other understanding existed than those set forth in writing, a stipulation binding on the purchaser: Ridgeway Dynamo & Engineer Co. v. Pa. Cement Co., 221 Pa. 160; Gross v. Exeter Machine Works, 277 Pa. 363. There was no proof of any contemporaneous parol agreement, broadening the responsibility of the plaintiff, which induced defendant to accept the proposal. We are not, therefore, concerned with alleged defects in design and workmanship, but only with the question as to whether the terms of the guaranty were complied with. What has been said disposes of the ninth assignment of error adversely to appellant.

Plaintiff guaranteed,—or warranted, for the effect is the same (28 C. J. 894),—that the furnaces would supply certain temperatures if properly operated, and fixed the pressure of oil and steam to be employed to reach this end. Defendant permitted the plant to be installed and made use of it,—in fact still operates some of the units. It matters not whether, in commenting on this

conduct as constituting an acceptance, the lower court, in referring to the legal result of so doing, called attention (the fourth assignment of error) to the rule to be applied in such cases as defined by the Sales Act. If that legislation does not apply to personalty, which has become attached to realty,—and this question it is not necessary to decide,—the common law principle, which brings us to the same conclusion, does. The work was completed in 1921; the agreement to pay, subject to the right to reimbursement, if a breach subsequently appeared, was made many months later; and a final refusal to accept not expressed until after nearly seven months of actual operation. Clearly, the only redress remaining to the defendant, under the circumstances, was to secure an award for a loss which it sustained, if a default on the part of plaintiff could be shown.

We have examined with care all of the testimony offered by the defendant to show that the furnaces would not supply the uniform and controllable heat contemplated by the agreement, when handled in the proper manner designated in the specifications. This has been done, with the rule in mind that all evidence, and reasonable deductions therefrom, shall be considered in the light most favorable to the defendant, since judgment was here entered non obstante veredicto. The burden of proof was on it to establish the breach by which it seeks to escape liability: 9 C. J. 878; Avery v. Burrall, 118 Mich. 672, 77 N. W. 272; Susquehanna Silk Mills v. Jacobson, 173 N. Y. Supp. 271; Smith & Sons Co. v. Janesville Batting Mills Co., 150 Wis. 528, 137 N. W. 966; Filbert v. Phila., supra. The conclusion reached is that this was not met, and there was no evidence offered, showing a failure of the furnaces to function after proper operation, in the way provided for in the specifications and accompanying instruction sheet, which would justify a finding to the contrary. Appellant relies largely on the testimony of the witnesses Trood, Pugh and Henegan, but what was said by them was in-

sufficient to make necessary the submission of the case to the jury. The first did testify he "tried everything triable," with pressure "from 120 to 16,"—figures probably reversed,—but he was referring to the use of steam, and made no statement based on observation when pressures of oil and steam were combined in the proportions named in the specifications, and designated as the proper manner of operation. Pugh saw the inspection sheet, but testified that the pressure used was far in excess of that named as correct. Henegan told of an unsuccessful attempt of plaintiff's employees to work the burners, but a careful perusal will disclose that, at the time referred to, the matter under discussion was the use of the regulators. He told of no attempt to operate with the oil and steam at the pressures provided in the contract. Like objections are to be made as to the evidence given by Rieger, DeMare and Anderson, while Rowell, the first superintendent, after the commencement of operations, placed the entire blame for such trouble as appeared on an undue condensation of water, resulting from the freezing of steam pipes, over which plaintiff had no control. We, therefore, agree with the learned court below, when it declared in the opinion filed: " 'These burners require for efficient operation: oil at 25 to 30 pounds per square inch; compressed air or steam at 20 to 25 pounds per square inch.' It was therefore incumbent on the defendant to show that the furnaces, when operated at these pressures, would not comply with the guarantee. Upon an examination of the testimony, we are unable to find any from which it could be concluded that the furnaces had been so operated. On the contrary, the testimony of every one of defendant's witnesses who mentions the subject shows that they used oil pressures of 50, 60 or 80 pounds, with steam pressure slightly less......It follows that the defendants have not shown a breach of the warranty, and that the plaintiff was entitled to binding instructions for the whole amount of its claim." This disposes

of assignments one and two. Number three,—complaining of a refusal to grant a new trial,—can be dismissed as not properly before the court: Hawkins v. Director General, 277 Pa. 213. Even if it were, this court would interfere only if an abuse of discretion appeared, and none does: Weitz v. Banfield, 226 Pa. 241; Babbitt v. Jackson, 279 Pa. 480; Reist v. Wogan, 281 Pa. 107.

Further error is alleged in the refusal to admit evidence that the furnaces used an excessive amount of oil, thereby increasing unduly the cost of production. Indeed, a study of the testimony leads to the belief that it was this consideration which principally led to the opinions as to inefficiency of the plant. Assignment six is so clearly defective, and so violative of the rule of court No. 22 (North Shore R. R. Co. v. Penna. Co., 251 Pa. 445), that the question would not be referred to, if number five might not be construed to cover the objection raised. Neither can be sustained on their merits. In the affidavit of defense, and during the trial, the position was taken by the defendant that the word "efficient," as used in the guaranty, should be construed as "economical," and, it was contended, if the buyer was put to undue expense in securing uniform heat, there was a breach of the agreement. "The meaning of plain and ordinary words in common use is a question of law for the court": 13 C. J. 788. And "efficient" means "that which causes [a desired] effect": 19 C. J. 1018; Fox v. Barekman, 178 Ind. 572, 99 N. E. 989. If the contemplated and desired result is obtained, then the machinery purchased must be held to be "efficient," irrespective of the cost of operating it, unless the contract between the parties provides otherwise, or the word can be shown, in the special instance, to have some different trade meaning. Without proof, the appellant asserts such understanding exists, when the word in question has been employed as here, in referring to the purchase of machinery. "Where a word with a special meaning or a trade phrase appears in a contract, it is competent, if

justice so requires to introduce evidence to show the real sense in which such word or words were used, or, in a proper case, that they have a generally known fixed trade significance. But where a word has a common or generally accepted ordinary meaning, it is supposed to have been so intended, unless it be plain from the context or is properly made to appear that the word was used in some other sense": Roylance Co. v. Descalzi, 243 Pa. 180, 183. Before a usage may be denominated a custom, and bind those in the trade or business to which it refers, the meaning ascribed must be shown to be certain, continuous, uniform and notorious: Electric Reduction Co. v. Colonial Steel Co., 276 Pa. 181. No effort was made in the present case to prove any special understanding given by the trade to the word in question, such as here suggested. The court below, therefore, properly held the cost of operation not to be a question for consideration.

The refusal to permit testimony by DeMare as to the value of one of the units of the plant (assignment 7), was proper, as he had shown no qualification to express an opinion, and his competency was objected to. Nor is the court below to be convicted of error for refusing to send to the jury the statement in evidence setting forth the cost price of the various items entering into the contract between the parties. This was a matter for the exercise of its discretion, and there is nothing on the record to indicate an abuse. The eighth assignment, and all others, whether specially referred to or not, must be overruled.

The judgment is affirmed.