Fisher et ux. *v.* Allegheny County, Appellant.

472

Argued October 8, 1936. Before SCHAFFER, MAXEY, DREW, LINN and STERN, JJ.

*James A. Wright,* Assistant County Solicitor, with him *Charles Alvin Jones,* County Solicitor, for appellant.

*Benjamin L. Steinberg,* with him *Geo. J. Campbell,* for appellees.

OPINION BY MR. JUSTICE MAXEY, November 23, 1936:
In the widening, relocation and construction of State Highway Route No. 72, a part of the property of George E. Fisher and his wife situate in Richland Township, Allegheny County, was appropriated. The property consisted of a farm of 174.8 acres and was bisected by the Butler-Plank Road. This road was relocated, becoming State Route No. 72. The right-of-way of the new road within plaintiffs' farm is entirely without the lines of the old right-of-way and is partly through a "30-foot-deep cut" on plaintiffs' land. Of plaintiffs' farm a strip 60 feet in width and 2,000 feet in length was appropriated for highway purposes. There was also an appropriation of ground for slope purpose and for a change in the channel of a small stream flowing through the farm.

Plaintiffs claim that by reason of the relocation of the road, involving the "cut" above mentioned, the farm is no longer suitable, as it had been theretofore, for highway gasoline stations and restaurants, that the rentals they had formerly received from the proprietors of such places of business on their farm was no longer obtainable, that the flow from a spring of water on the farm had been so diverted by the relocation of the road as to convert a few acres of what had been good pasture land into "swamp land" and that by the diversion of traffic from the old road to the new road plaintiffs' furniture business, including the sale of antiques, had been destroyed, all of which was to their substantial pecuniary detriment.

After the appointment of viewers and a hearing, plaintiffs were awarded damages in the sum of $3,048. An appeal from this award was taken by plaintiffs and after trial the jury returned a verdict in favor of plaintiffs in the sum of $16,000, and $3,040 detention money, a total of $19,040. Defendant filed a motion for a new trial, averring, inter alia, that the verdict was excessive and that the trial judge erred in the exclusion of certain testimony.

The first assignment of error is based on the court's sustaining plaintiffs' objection to an offer of testimony. Plaintiffs' witness, Brown, a real estate expert, had been asked on cross-examination if he could tell of any piece of property which sold in Richland Township in 1934 that was comparable to plaintiffs' property, and which sold for $475 an acre (the figure at which he had placed the fair market value of the Fisher farm immediately prior to the relocation of the section of the Butler-Plank Road through that farm). The witness replied: "Yes, I know of a farm that sold for more than that, the farm adjoining the Garraux farm, which was sold by the Garraux Estate to Alfred Hufschmidt . . . for more than $400 an acre. . . . I think it was made in 1930." Plaintiffs' witness, Wright, also a real estate expert, was

asked by defendant's counsel on cross-examination about the Hufschmidt farm. He stated that he (the witness) sold this farm to one McGilvrey for Hufschmidt, in, he thought, the year 1925 or 1926. Plaintiffs' witness Shannon, another real estate expert, testified on cross-examination that the Hufschmidt farm was sold in the year 1926 for $416 an acre and that it contained 60 acres. "For the purpose of affecting the credibility" of these three witnesses, defendant offered in evidence the deed or exemplification of deed from Garraux to Hufschmidt to show that the farm contained 73 acres and was sold on September 26, 1921, at $300.09 per acre. This was objected to "as not the best proof with which to impeach the credibility of a witness." The objection was sustained.

This assignment is defective in that it violates Rule 22 of this court, reading as follows: "Each error relied on must be specified particularly and by itself. If a specification embraces more than one point, or refers to more than one bill of exceptions, or raises more than one distinct question it may be disregarded." This rule serves a salutary purpose and is not to be lightly disregarded. See *Tate-Jones & Co., Inc., v. Union Elec. Steel Co.,* 281 Pa. 448, 458, 126 A. 813.

It is not clear from defendant's offer that the deed offered related to this identical sale the witnesses had testified to. All of the witnesses referred to a sale of the Hufschmidt farm *not in 1921* but several years later. There was evidence that this farm had been sold three or four times subsequent to 1921. Witness Brown testified that the farm "has been sold and traded three times since then [1932] and the farm can be bought for lots less money now on account of the old road being left in front of it." Brown did testify on cross-examination to a sale of a farm "adjoining this Garraux farm." The sale he said was made by the "Garraux Estate," not by Mr. Garraux, "to Albert Hufschmidt." He thought the sale was made in 1930 and it was "for more than $400

an acre." The deed offered in evidence to impeach this witness and witnesses Wright and Shannon was dated September 26, 1921, and was between Edna V. Garraux and Mary E. Garraux, both unmarried, parties of the first part, and Alfred Hufschmidt, party of the second part. It therefore does not appear with sufficient definiteness that the sale Brown testified to as having been made by the "Garraux Estate" in 1930 was the identical sale made by Edna and Mary Garraux in 1921. For all that appears the property might have, during the nine-years-period between 1921 and 1930, been again conveyed to those who were later represented by the term "Garraux Estate." The sale in 1930, testified to by witnesses Wright and Shannon, was so clearly not the sale which the deed evidenced that the deed could not have served as an impeachment of their credibility. None of the witnesses whose testimony was the subject of the attempted impeachment by the 1921 deed had mentioned a sale of the Garraux farm *in that year*. If they had specifically mentioned such a sale and had given an erroneous figure as the sale price, the trial judge should have overruled the objection to the offer of the deed for the purposes for which it was offered. This court said in *Henkel v. Wabash, Pittsburgh Terminal R. R. Co.*, 213 Pa. 485, 62 A. 1085, that a party against whose interest a witness has testified may show that the opinion expressed is valueless as evidence because it is founded on a misapprehension of the facts, and that this rule does not offend against the rule that "the proper test of the value of land taken under the right of eminent domain is its market value and that this value is not to be ascertained by proof of particular sales but by the general selling price of land similarly situated."

The second assignment of error is based on the court's sustaining plaintiffs' objection to defendant's counsel's asking defendant's witness Sharp, if he was "acquainted with the sale from the Garraux Estate to Albert Hufschmidt in the year 1930" of a 60-acre property which

plaintiffs' witness Brown had testified brought "a little over $400 per acre." This was evidently a preliminary question and could well have been allowed. The trial judge's ruling apparently did the defendant no harm, for counsel was then permitted to ask: "Do you know the selling price of the Garraux Estate to Albert Hufschmidt?" The witness answered that he did and that the sale was made on September 26, 1921, and the area was ten acres. Objection was then made to this testimony as not being a contradiction of Mr. Brown's testimony, "because Mr. Brown referred to a sale in the neighborhood of 1930." The court said: "We will sustain the objection to the testimony as a claimed direct attack upon the credibility of Mr. Brown. If you want to present it for what it is worth as to Mr. Sharp's knowledge of value and the indirect effect it may have in the jury's mind upon Mr. Brown's claim and recollection and knowledge of the same sale, we will admit it." Counsel answered: "I don't want to admit this is a sale considered, but the purpose of this testimony— The court: If you don't want to have it admitted for that purpose, then we are not going to admit it. Objection sustained." This last ruling is the subject of the third assignment of error. Both the second and third assignments are overruled.

The fourth assignment of error is based upon the court's affirmation of the second point presented by plaintiffs, reading as follows: "Decreases or loss of plaintiffs' business of buying and selling household furniture as a result of the widening, relocating and construction of State Highway Route 72, through the property of the plaintiffs, is an appropriate factor to be considered in determining depreciation in the fair market value of plaintiffs' property." It is established that the appellees conducted a secondhand furniture business at their home and that the change in the location of the state highway took travel away from their place of business, resulting in the closing out of the furniture busi-

ness. Plaintiff, George Fisher, testified that he conducted a secondhand furniture business, including the selling of antiques, that he had signs on the old Butler-Plank Road, showing that he operated a secondhand furniture business and that he conducted this business for about four years. He said: "We drew a good deal of trade from our local surroundings, and I would say that forty per cent of the furniture went anywhere from 20 to 40 miles from our place." After the new road was opened, Fisher said: "We just sold it [the furniture business] out for what we could get and quit." In the case of *Regina et al. v. Monroe County*, 319 Pa. 257, 179 A. 36, this court held that "the value of the premises as a hotel or boarding house was derived from its location along the stream of traffic, and there is no doubt that that value might well be lessened in the eyes of a purchaser as a result of the relocation of the road." The fourth assignment is overruled.

The fifth assignment is based upon the refusal of defendant's motion for a new trial. This motion was based upon the following allegations: (1) the verdict was excessive, (2) it was against the evidence, (3) it was against the weight of evidence, (4) it was against the law, and (5) the court's refusal to admit in evidence the deed from Edna Garraux to Albert Hufschmidt. This latter reason has already been discussed.

The only question now requiring discussion is whether or not this verdict was excessive. This question was not raised by a separate assignment of error. This court in *Riff et ux. v. Pittsburgh Railways Co.*, 298 Pa. 256, 262, 148 A. 102, said: "The question of excessive verdicts is not separately assigned as error, but only appears as one of the four reasons in the motion for a new trial, the refusal of which is assigned as error. The question as to whether the trial court abused its discretion in refusing a new trial may be raised on a single assignment setting out the motion and reasons for a new trial and the ruling of the court thereon; but the reasons therefor, if de-

pended upon as errors, must be separately assigned: *Duff v. Hamlin*, 272 Pa. 245, 251 [115 A. 829]; *McKee et al., Tr., v. Ward et al.*, 289 Pa. 414, 418 [137 A. 599]. . . . Otherwise Supreme Court Rule 22, which requires that each error be separately assigned, is violated." This court said further in that case on the question of excessive verdict: "Plaintiffs' evidence, if credited, made out such a case of serious injury to the wife plaintiff as to support the verdicts. We can interfere in such case only to prevent manifest injustice. To justify this court in granting a new trial on that ground the verdict must be such as to demonstrate that the jury abused its powers and that the trial court failed to grant relief: *Goldman v. Mitchell-Fletcher Co.*, 285 Pa. 116, 131 Atl. 665."

The question of the amount of damages sustained by the plaintiffs in a case such as this is purely one of fact for determination by a jury acting under proper instructions. One witness for plaintiffs testified that the market value of the farm in question immediately prior to the date of the approval of the State Highway Route No. 72 was $80,900 and that after the approval of the plans for the construction of this 60-foot highway the property was only worth $49,300, thus making the damage $31,600. Another witness fixed the damages at $31,410; another witness at $30,000. Defendant's witness fixed the damage at $1,500; another at $2,800; and another at no damage. The jury viewed the premises and saw the new highway and were in the best position to judge the effect the relocation of the highway had on the market value of plaintiffs' farm.

That plaintiffs sustained substantial damage by the relocation of a main-traveled highway between Butler and Pittsburgh through their farm and putting it partly through a deep "cut" on another portion of their farm, is not open to question. They formerly rented a house and lot on their farm, along the old highway, as an eight-pump gasoline station, at $45.00 a month. The reloca-

tion ended that revenue. They were likewise deprived of $35.00 a month rental of another building along the old highway. Another building suffered for the same reason a diminution in rental value of about $34.00 a month. Another rental of $17.50 a month for the location of a restaurant known as the "Coffee Pot" was likewise wiped out. Plaintiffs also had another tenant on the farm in a place known as the "Curved Inn." The rent was $15.00 a month. After the relocation of the road this tenant moved out. The plaintiff himself operated a secondhand furniture business, including the sale of antiques, in his home on the old road. About 40% of this furniture business was due to highway traffic.

Plaintiff, George E. Fisher, testified that most of his own farm was uncultivated, and that his income was largely derived from leases to tenants on the highway, plus his furniture business. He claimed also that the change of relocation of the road made part of his land swampy, that since the change of grade a creek on his farm overflowed onto his land and that it never did this before. He declared that the change of grade caused the destruction of a good spring on the property, a spring "that was our main water for the cattle," and that this spring "has been running ever since he can remember."

Just how substantial the total damage done plaintiffs was in terms of dollars and cents the jury which tried this case was in the best position to judge. The issue was submitted with proper instructions and the jury evidently endeavored to reach a just verdict. There is nothing in this record which would warrant us in declaring that the verdict was so clearly excessive that a new trial should be had to correct it.

The judgment is affirmed.