## Reeder  Condemnation

*Merrill W. Kerlin,* for plaintiff.

*M. David Halpern,* Assistant District Attorney, for Commonwealth.

MACPHAIL, P. J., July 10, 1968.—On May 13, 1964, the Commonwealth of Pennsylvania, Depart-

ment of Highways, condemned by appropriate proceedings 18.411 acres of land in Todd Township, Fulton County, belonging to Mr. and Mrs. Donald Reeder. The purpose of the condemnation was for the construction of the so-called McConnellsburg by-pass, U. S. Route 30. The case came on for trial before a jury which awarded damages to plaintiffs in the sum of $27,900. The Commonwealth filed a motion for new trial on the grounds that the verdict was excessive and was against the weight of the evidence. After the testimony was transcribed, 11 additional reasons were assigned by the Commonwealth for the granting of a new trial.

On the date of taking, plaintiffs owned approximately 166 acres of land just north and west of McConnellsburg which they used for general farming purposes. A tenant farmer maintained a dairy herd on about 35 acres of the property at the time of condemnation. The tenant farmer left the farm in 1965 and farming operations thereon have ceased since that time.

The land appropriated by the Commonwealth is 300 feet wide and approximately 2,600 feet long. Generally speaking, it runs through the middle of the farm from east to west leaving 79.75 acres lying south of the legal right of way and 67.381 acres lying north thereof. The entire length of the bypass through the Reeder farm is limited access. There is no way for the owners to have access from one tract to the other except by going through the borough of McConnellsburg. All of the land taken was unimproved and at the time of condemnation was used for general farming purposes. The owners estimated their damages at $35,000 and their 2 qualified valuation experts estimated the damages at $30,000 and $25,000, respectively. The Commonwealth's expert witness estimated damages at $14,200. The Board of View awarded damages in the sum of $22,500. Estimates of the fair market value of

the entire tract prior to condemnation vary from the owners' estimate of $50,000 to the estimate of the Commonwealth's expert of $31,000.

No oral argument was presented by the Commonwealth on the excessiveness of the verdict or that the verdict was against the weight of the evidence. Even though the verdict was more than the award of the viewers, the disparity does not shock our sense of justice: Vaughan v. Commonwealth, 407 Pa. 189 (1962). The damages awarded by the jury were less than those estimated by the owners and one of their experts. Furthermore, now that the jury's view is evidentiary we feel that the matter of damages in condemnation cases is more clearly than ever a jury question under proper instructions from the court: Fisher v. Allegheny County, 324 Pa. 471 (1936); Pennsylvania Turnpike Commission v. Shotts, 9 Adams 138 (1968).[1] We cannot say as a matter of law that the verdict in this case was excessive or against the weight of the evidence.

Before a jury was impaneled, the Commonwealth presented a list of questions to counsel for plaintiffs and to the court with the request that the court propound those questions to the jury on voir dire. Where plaintiffs objected to the question to be asked we made specific rulings. Where we ruled adversely to the Commonwealth, exceptions were noted and the Commonwealth now argues that our rulings are grounds for a new trial.

The examination of jurors under voir dire is solely for the purpose of securing a competent, fair, impartial and unprejudiced jury. While considerable latitude should be permitted on a voir dire the inquiry should be strictly confined to disclosing qualifications or lack of qualifications of a juror and whether the

---

[1] On appeal to the Pennsylvania Supreme Court, judgment was affirmed July 1, 1968.

juror has formed a fixed opinion or may be otherwise subject to disqualification for cause: Commonwealth v. McGrew, 375 Pa. 518 (1953). The purpose of the voir dire examination is not to provide a party litigant with a better basis upon which to utilize its peremptory challenges: Commonwealth v. Lopinson, 427 Pa. 284 (1967). If the questions have no relation to qualifications of jurors, the mere asking of them and the resultant discussions could unduly clog the wheels of justice: Commonwealth v. McGrew, supra.

We were requested to ask the jurors whether any of them had ever owned any land that was condemned by the Commonwealth of Pennsylvania or by any other political subdivision such as the Turnpike Commission. We are of the opinion that such a question is not much different from asking whether or not a juror had previously served on a jury on a condemnation case. As was said in Commonwealth v. Corbin, 426 Pa. 24, 26 (1966), "Thus, the questioning is to be confined to disclosing qualifications or lack of qualifications of a juror . . . The inquiry as to previous jury service in a murder case would not, per se, reveal competence or the lack of it". That rule is fully applicable to the type of question under consideration here. The mere fact that one of the jurors had owned land which had been condemned would not, per se, render a juror incompetent. True, a positive answer may give the Commonwealth a better basis upon which to utilize its peremptory challenges, but such is *not* the purpose of voir dire examination: Commonwealth v. Lopinson, supra.

We were requested to ask the jurors if they have any malice or dislike toward public authorities who find it necessary to take private property for public purposes. A positive response to this question by a juror would, in our opinion, be grounds for a challenge for cause. If a juror did bear any malice or dislike

toward public authorities who condemn private land for public purposes, that juror could hardly be an unprejudiced juror in a case of this nature and his qualifications as a juror would, by his positive answer, be impeached. The Commonwealth should have been permitted to ask this question and our refusal to permit it was erroneous. We do not think that the error was cured when we asked the jurors if any of them felt that it was improper or unjust for a governmental authority to take property. One might very well feel that a governmental authority had a legal right to take land, but at the same time that person could have a feeling of malice or dislike of that authority for exercising that right. If such feeling existed, it would render him incompetent as a juror.

As to our refusal to ask certain other questions which the Commonwealth requested, our reasons for refusing to do so are set forth in detail in our opinion in Commonwealth v. Morton, 10 Adams 81 (1968), where similar questions were proposed and similar rulings made. We find no error in our rulings on these questions.

The Commonwealth complains that we refused to strike the testimony of plaintiffs' expert, Howard Ott, on the grounds that Ott had used comparable sales in arriving at his estimate of damages but did not verify the facts of those comparable sales with the parties involved. (He testified that he used the information appearing on the courthouse records.) Significantly, the Commonwealth cites no legal authority for this objection. Section 705 (1) of the Eminent Domain Code of June 22, 1964, P. L. 84, states that a qualified valuation expert may state any or all facts and data which he considered "whether or not he has personal knowledge thereof". That section goes on to provide that the facts and data upon which he relied are subject to impeachment. It is our opinion that this was the most

that the Commonwealth could make of this situation. This was grounds for impeaching the credibility of the witness but nothing more.

Complaint is made by the Commonwealth that we refused to admit pictures of properties referred to by the witnesses as comparable sales. Again, the Commonwealth cites no authority for its position. Such evidence would be clearly irrelevant. While the Eminent Domain Code, section 705 (2) (i), authorizes a qualified valuation expert to testify as to comparable property sales he used in arriving at his estimate of damages, this does not open up the case for the introduction of evidence for the jury to determine the fair market value of *other* property before and after condemnation. If we did this we would also have to go into all of the other factors which went into a determination of the sale price of the comparable to say nothing of the circumstances surrounding the pictures offered in evidence. This we do not think the law intended. The evidence was properly excluded.

In the course of the trial one of plaintiffs' experts used the sale of Pfeffer to the Commonwealth as comparable. The Commonwealth proposed to ask its expert why he *didn't* use that comparable. Again, the question is one of collateral issues. All that the act authorizes is testimony as to comparable sales which an expert *did* use. To permit a witness to testify why he did not use certain comparables opens up a whole series of collateral issues which the law did not contemplate.

Finally, the Commonwealth argues that we erred in refusing to permit its expert to testify as to the use the Commonwealth intended to put the Pfeffer property (a comparable sale). The sole purpose for which comparable sales can be used is a basis for arriving at an estimate of damages in a given condemnation case. *Why* a comparable property was purchased is completely irrelevant.

ORDER OF COURT

And now, July 10, 1968, a new trial is granted solely for the reason that the court erred in excluding a question on voir dire which was proper and the exclusion of which was prejudicial to the Commonwealth.