ISAAC TILLETT, JR., v. NORFOLK SOUTHERN RAILROAD COMPANY.

(Filed 23 September, 1914.)

1. Railroads — Negligence — Contributory Negligence—Master and Servant — Insufficient Help — Trials—Evidence—Questions for Jury.

   In this action brought by an employee of the defendant railroad company for damages resulting while loading 560-pound rails, 30 feet long, upon a flat car 4½ feet from the ground, there was evidence tending to show that the injury occurred while the plaintiff was attempting, under the orders of the defendant's vice principal, to load one of the rails with insufficient help; the plaintiff was on the ground with another man to help him lift the rail to such position and in such manner that others upon the car could receive and place it there; that while lifting a rail in this manner, it slipped from the hands of the plaintiff's helper, inflicting the injury complained of: *Held* sufficient, upon the question of defendant's actionable negligence in failing to furnish sufficient help, to be submitted to the jury, and plaintiff's cause of action was not barred by the defense of contributory negligence as a matter of law, under the evidence. *Pigford v. R. R.*, 160 N. C., 93, applied, and *Bryan v. R. R.*, 128 N. C., 387, distinguished.

2. Appeal and Error—Objections and Exceptions—Questions and Answers—Evidence—Harmless Error.

   The question of defendant's negligence in this case depending upon whether the defendant had provided sufficient help for the

plaintiff to load rails upon its flat car, the admission of his testimony as to the number of men required is held harmless, if erroneous, he having elsewhere testified thereto without objection; and his answer to another question objected to, having little if any probative force, under the circumstances of this case is not held for reversible error.

3. Verdicts — Agreement — Taken by Clerk—Unanswered Issues—Subsequent Answers—Judgments—Unapproved Practice.

It having been agreed by the parties that the clerk should take the verdict of the jury during recess of court, the foreman put the verdict in his pocket, the jury separated, some of them telling what the verdict was, and the foreman handed it to the judge upon reconvening of court. The judge then reassembled the jury, asked them if they had agreed upon their verdict, was informed that they had, and then read the issues and answers to them, which they said was their verdict, agreed upon before they separated. The judge sustained the verdict thus rendered, and it is held on appeal to be no error. The custom permitting clerks of court to take verdicts in recess in the absence of the judge is not approved.

APPEAL by defendant from *Ferguson, J.,* at January Term, 1914, of CURRITUCK.

This is an action to recover damages for personal injury caused, as the plaintiff alleges, by the negligence of the defendant in failing to furnish a sufficient force of hands to do the work in which the plaintiff was engaged at the time of his injury.

The plaintiff testified as follows: "In May, 1911, I was working on the Norfolk Southern Railroad at Snowden in this county, and was loading 30-foot iron rails on flat cars. The flat car was 4½ feet from the ground. The rails were lying down by the side of the track. There were four of us loading the rails. We had to take the rails up and put them on the car; the first rail we had four men. Four were the crew, and the bossman made five. When I got hurt nobody but the captain and myself were loading. There were two of the men on the flat car. The rails weighed 560 pounds. Thornton Lowry was boss; Enoch Whedbee, William Bray, and a fellow by the name of Nema (but he had stepped off) and myself were in the gang.

TILLETT *v.* R. R.

Whedbee and Bray were on the flat car. Lowry and I were·on the ground loading rails, trying to raise them from the ground and put them on the car. The captain and I were lifting a rail and trying to put it in the car, and by the time that we got it a little above our heads, the captain let it slip out of·his hand. It slipped at the other end. Captain said it slipped out of his hand and hit me on the head, and I did not know anything else. It was too much for us to lift, and I said to the captain that we could not raise it, but he said, 'Oh, yes, we can. Come on.' I told him that there was not enough men. There were two men on the flat car. After he told me to go ahead, I lifted the rail· with his help."

Question: "State what was the cause of it slipping from his hand, if you know."

To this question the defendant objected, which objection· was overruled, and defendant excepted.

Answer: "We did not have enough men; two men were not enough to load the rails.

"He told me to hold it in my arms till he could get a new hold. He asked me if I could hold it till he could get a new hold, and before I could grab it again it slipped out of his hands. It struck me on the head. I did not know anything else till I got to headquarters between 10 and 11 o'clock. They carried me to the doctor's office, and I was then taken home. I was confined at home for twenty-two or twenty-three days. While I was there, at times I would not have any sense, and sometimes I was not any· good. I was confined to the bed for twenty-three· days. I was up and about during the twenty-three days. The captain came to see me and asked me how I was getting along. The doctor said that I did not need any further treatment, and said that I could go back and do what I felt like doing. I went back to work and stayed five or six days. I could not work; got worse. This was in June. I have stopped ever since. When I tried to work I felt in the head like I would fall. I felt like my head was going around and around. My head gets that way sometimes now. Before this I was all right. I was never· troubled with my head before. It hurts me now, and I have a

pain in my eye. I have had it ever since the time that I was struck till the present. I cannot stand the hot weather, and cannot do half a man's work. I could stand hot weather before. I have not been paid anything for loss of time.

"I went to Norfolk at the request of the railroad. They wanted me to sign something. I do not know what it was called. I reckon it was for me to go to work. They wanted me to sign and release any claim. I did not sign it.

"We always used as many as two or three men on the push car, and this was the flat car. The push car is not as high as a flat car. We had two or three men. to put it on the push car. Never used less than four men to put on a car of this size. We had nothing to keep them from falling when we raised them."

Question: "If you had had a piece to have held the rail when you were getting a grip, what effect would that have had?"

To this question the defendant objected, which objection was overruled, and defendant excepted.

Answer: "That would have had a light force.

"If we had had as many as four men we would have loaded it all right. We had five men to put on the first rail. One had stepped aside, and there was no one on the ground except the captain and myself. I got $1.10 per day."

Cross-examination: "I have been working for the railroad for nine years. The 'rails were 30 feet long and weighed 560 pounds. I think Wallace Bray and Whedbee have moved to Virginia. I have often loaded cars before. Whedbee had been working a year or two, Bray about a month, and Captain Lowry about three years. If we did not have enough men, we would get wooden forks and carry them up as the rails went. We would lift them this way and slide them on the car. We would lift it that way and then get around and push it on. At the time that I was hurt we did not get the first end up. The men on the car had not taken hold of the rail. We were going to hand it to them. We would go to the end and try to get the other end up; we would hand it to them. I cannot tell how many rails I have loaded that way. We would get an angle bar and stick it there and get the other end and put it on. That is

the way the boss loaded rails. We had not gotten the first end up when I was hurt. I didn't know anything when I got hurt. I was carried to Moyock on the hand car, and was able to walk up to Dr. Mann's office.

"I am not working anywhere. My wife is working and helps me along. I can do a little something, but I cannot do as I used to do. I cannot do half a man's work. I have had headaching never before as now. I do only work a part of a day. I try to farm a little, so that I can sit down when I want to."

The defendant by motion to nonsuit, by exceptions to parts of the charge, and to the refusal to give certain prayers for instruction, raised the question as to whether there is any evidence of negligence, and if there is such evidence, contends that the plaintiff on his own evidence assumed the risk of his injury or was guilty of contributory negligence.

The jury returned the following verdict:

"1. Was plaintiff injured by the negligence of defendant, as alleged? Answer: Yes.

"2. Did plaintiff contribute to his own negligence? Answer: No.

"3. What damage is plaintiff entitled to recover? Answer: $500."

"The case was given to the jury just before the noon recess of court. By consent, the jury were instructed to return their verdict to the clerk. The jury retired and the court took recess. The jury agreed on the verdict, and wrote their answer to the issues. The foreman of the jury put the issues so answered in his pocket, and the jury, without returning the verdict, separated. They told on the outside during the recess of the court what their verdict was. On the reassembling of the court the foreman, in the absence of a number of the jury, handed the issues so answered to the judge. The judge did not read aloud the issues and answers until all the members of the jury were in their seats in the box. The judge then asked the jury if they had agreed on their verdict. They answered that they had. He then read the issues and responses, and asked if that was their verdict. They answered yes, and that they had agreed on the

verdict and issues answered before they separated. The court reproved the jury for separating before returning the verdict.

"The defendant moved to set aside the verdict because of the above facts. This was denied. The defendant excepted."

There was a judgment upon the verdict in favor of the plaintiff, and the defendant excepted and appealed.

*Aydlett and Simpson for plaintiff.*
*J. Kenyon Wilson for defendant.*

ALLEN, J. In the case of *Pigford v. R. R.,* 160 N. C., 93, in which the evidence was very much like that in this case, *Associate Justice Walker* delivers a comprehensive and learned opinion which covers all of the exceptions of the defendant as to negligence, assumption of risk, and contributory negligence, and further discussion of these questions here is unnecessary.

The case of *Bryan v. R. R.,* 128 N. C., 387, relied on by the defendant, is not in point, because in that case there was no evidence of failure to furnish a sufficient force of hands, and it was because of failure to produce such evidence that the Court held that the injury to the plaintiff was the result of an accident.

The exceptions to evidence cannot be sustained.

If the answer to the first question is objectionable as an expression of opinion, as contended by the defendant, the same witness gave the same testimony without objection. He testified to the circumstances attending the injury, the weight of the rails and the number of hands employed, and said, when there was no objection taken, "If we had had as many as four men we would have loaded it all right."

The answer to the question which is the subject of the second exception to the evidence had very little, if any, probative force, and could not constitute reversible error.

The custom, which is very general, of allowing juries to return their verdicts to the clerk in the absence of the judge, is not approved, as it frequently results in misunderstandings and in an attempt to impeach the verdict; but in this case the findings of the judge show that the verdict upon which the judgment is rendered was agreed to before the jury separated, and there

TILLETT *v.* R. R.

is nothing to indicate that any improper influence induced the verdict, and the action of his Honor in refusing to set it aside is sustained. *King v. Blackwell,* 96 N. C., 322; *Luttrell v. Martin,* 112 N. C., 594.

In the first of these cases it was agreed that the clerk might take the verdict of the jury and the court adjourned at 7 p. m. until 9:30 o'clock the next day. The jury coming to a conclusion at 11:30 p, m. and the clerk having gone home, by permission they placed their verdict in an envelope and sealed the same, wrote on the back of the envelope, "Verdict of the jury," and handed it to the sheriff of the county, who had the jury in charge. The sheriff placed the envelope in his safe and on the meeting of the court the judge had the jury called into the box and the foreman in the presence of the jury opened the envelope, and it was held that the exception to the verdict could not be sustained; and in the second case the jury returned their verdict to the clerk without answering the third issue, and on the next day the judge called the jury into the box and permitted them to answer this issue, although it was in evidence that some of the jurors had talked with several parties, after their separation, about the case, and it appearing that the jury had agreed upon an answer to the third issue before they separated and the court finding that they had not been influenced by anything said to them, the verdict was sustained, the Court saying: "The jury having found the third issue before their separation, it was no error to permit them to assemble again and write it down, especially as the judge finds as a fact that the jury had not been influenced by what had been said to them after their separation."

No error.