**A. J. CONROY, Inc., v. WEYL–ZUCKER-
MAN & CO.**

No. 4186.

District Court, N. D. California, N. D.

July 8, 1941.

Neumiller & Ditz and R. L. Beardslee, all of Stockton, Cal., for appellant.

Rowland & Craven, of Sacramento, Cal., for appellee.

ROCHE, District Judge.

This is an appeal from a reparation award made by the Secretary of Agriculture. It is taken under the Perishable Agricultural Commodities Act of 1930, hereafter referred to as the P.A.C.A., 7 U.S.C.A. § 499g. The P.A.C.A. provides for a trial de novo upon appeal, with the findings of fact and orders of the Secretary of Agriculture standing as prima facie evidence of the facts therein stated.

Appellant, a licensed Stockton corporation dealing in vegetable products, seeks to set aside an award of the Secretary of Agriculture in favor of appellee, a licensed Milwaukee corporation which purchased a carload of carrots from appellant. In an action before an examiner of the Department of Agriculture, appellee alleged that the carrots arrived in a decayed condition, contrary to the terms of the contract of sale. Appellee further alleged that such decayed condition constituted a failure of delivery in accordance with the terms of the contract without reasonable cause on the part of appellant, in violation of Section 2 of the P.A.C.A., and that therefore appellee was entitled to be reimbursed for the loss which it had suffered under the contract. Section 2 reads in part as follows:

"It shall be unlawful in * * * any transaction in interstate * * * commerce * * * For any dealer to * * * fail to deliver in accordance with the terms of the contract without reasonable cause any perishable agricultural commodity * * * sold * * * in interstate * * * commerce by such dealer." 7 U.S.C.A. § 499b(2).

The examiner found that appellant had violated this section by failing to deliver carrots which met the contract requirements. Accordingly, the Secretary of Agriculture made a Reparation Award from which the shipping dealer now appeals.

The following facts, as established at the trial and as found by the Secretary of Agriculture are not subject to dispute:

On June 29th, 1937, appellant sold to appellee one carload of topped carrots to be U.S. No. 1 grade, ¾ inch minimum, 85% 1 inch or larger, at $1.25 per 50 pound bag, f.o.b. shipping point, Stockton, California, icing extra. The sale price totaled $750. The parties entered into this contract of purchase by a series of telegrams sent on June 28th, 29th, and July 1st.

Appellant shipped the carload of carrots under "initial ice" from Stockton, California on June 30, 1937. Before loading the carrots, appellant had them inspected by a Federal Inspector, who found them to be graded U.S. No. 1, ¾ inch minimum, with defects within grade tolerance. On the following day, appellant wired appellee that the carrots were shipped under initial icing only. Neither party ordered more ice while the car was in transit.

The carrots reached Milwaukee, the place of destination, on July 7th. Appellee examined the carload and discovered that the carrots had begun to spoil. On the following day a federal inspection showed that decay existed in all sacks, ranging from 4% in some to practically the entire contents in others.

Upon arrival of the carrots, appellee paid appellant the agreed purchase price and settled freight and icing charges of $341.38. After disposing of the 12,345 pounds of carrots which were salvaged, appellee presented a claim for damages in the sum of $770.12, this representing the loss to appellee caused by the decayed carrots. It was appellee's position before the Secretary of Agriculture that the carrots failed to meet the terms of the purchase contract without reasonable cause, as required by Section 2 of the P.A.C.A. The Secretary sustained appellee and made the reparation award which has given rise to the present appeal.

Appellant contends that its carload of carrots complied with the requirements of Section 2, that the Secretary of Agriculture was in error in finding that the carrots failed to meet the terms of the contract without reasonable cause, and that the reparation award must be set aside. Appellee denies that the shipment of carrots com-

plied with the provisions of Section 2 of the P.A.C.A. The joinder of issue by the parties gives rise to the question: Is there a violation of the P.A.C.A. by a dealer whose product appears to satisfy the terms of the contract of sale at the point of shipment (as found by a federal inspector), in an f.o.b. shipping point contract but fails to meet the contract requirements at the point of destination (as found by a federal inspector), by reason of decay which has occurred en route?

Under the terms of the contract, title and risk passed to appellee when the carrots were shipped from Stockton, California. Thereafter, normal deterioration losses, arising en route to Milwaukee would fall upon appellee. If the decayed sacks of carrots were the result of improper refrigeration under the seasonal weather conditions, then appellee would bear the loss. But if the carrots contained a latent defect, which only made itself manifest in the course of shipment, then appellee must prevail.

The evidence discloses that during the two-week period from the thirtieth of June, when appellant's carrots were shipped, up to the thirteenth of July, appellant dispatched some thirteen carloads of carrots to various parts of the country. Appellant's witness testified that these carloads moved under packing and icing conditions which were similar to those under which appellee's carrots traveled. All of the carrots which made up these carloads were picked from the same acreage. In no case, except that of appellee, did any purchaser register a complaint about the condition of the carrots upon arrival at point of destination. But decay struck at appellee's carload. This decay could have been caused by sweating, brought about by improper refrigeration during the hot weather of July; or it could have been caused by "watery soft rot", a disease of field origin. Which of these causes does the record establish?

The inspector of the carrots at Milwaukee, after an examination of the decay, concluded that it was caused by watery soft rot. The Secretary of Agriculture concurred in this opinion. He then took ju-

dicial notice of the fact that watery soft rot is a disease of field origin, as shown by a pamphlet published by his Department.[1] It is a disease which remains latent within the carrots until one, two, or several days after they have been picked. The speed with which it manifests its presence and causes decay depends in part upon the temperature under which the carrots are kept. It works most rapidly at warm temperatures. Based upon the report of the examiner and the information contained in the Department's pamphlet, the Secretary made his ruling in favor of the appellee.

As opposed to the evidence set forth in the preceding paragraph that the carrots decayed because of an inherent defect in the form of watery soft rot, the Court has the cross-examination testimony of appellee's expert witness to the effect that the carrots may have spoiled because of sweating, brought about by improper refrigeration. This latter evidence is purely conjectural, as against the eye-witness diagnosis of the decayed carrots made by a trained federal inspector. The Court will accept the findings of the Secretary of Agriculture, based on the careful examination of the destination inspector, that appellee's carrots were suffering from watery soft rot, which was brought out in the course of shipment across the country. Under these circumstances, upon whom does liability rest for the decayed condition of the carrots?

Where food products do not come up to the contract requirements, the shipper must bear the loss. See De Vinney and Tucker v. Demase and Morgan Company, Secretary of Agriculture's Decisions 196, April 22, 1933; Pratt Orchard Company v. Mercantile Produce Company, Secretary of Agriculture's Decisions 196, October 25, 1934, Docket No. 319 (Perishable Agricultural Commodities Act Decisions); H. E. Barcus v. R. H. Dietz & Co., Secretary of Agriculture's Decisions 2120, January 12, 1939, Docket No. 3093 (P. A.C.A. Decisions); Reedley Grape Growers, Inc., v. Thomas H. Ayoob, Secretary of Agriculture's Decisions 1287, Docket No. 1729 (P.A.C.A. Decisions); and W. C. Thompson v. Sam Posekoff, Sec-

[1] United States Department of Agriculture, Bureau of Plant Industry, Office of Cotton, Truck and Forage Crop Disease Investigation, Washington, D. C., Handbook of the Diseases of Vegetables Occurring Under Market, Storage, and Transit Conditions. Dated May 24, 1919.

retary of Agriculture's Decisions 820, Docket No. 1191 (P.A.C.A. Decisions).

The fact that the defect in the commodity is not discernible at the point of shipment does not alter liability, which falls on the shipper by reason of an implied warranty which is attached to the goods. California Civil Code, Section 1735 (1), and cases. The P.A.C.A. does not remove the applicability of the law of sales; it merely gives an additional remedy to growers, who were previously forced to resort to expensive trials in all cases in which dealers and commission men failed to live up to the provisions of their contracts.[2] Where goods, such as carrots in the case before this court, suffer from a latent defect which takes time to appear, and hence do not meet the implied warranty of quality which is attached to the contract, the shipper is responsible under Section 2 of the P.A.C.A.

The evidence shows that appellant's carrots suffered from watery soft rot. This is a disease of field origin as established by appellee's expert witness, who confirmed the findings of the Secretary of Agriculture.[3] Since appellant's carrots were inherently defective, and thus failed to meet the implied warranty of quality attached to such products, appellant must sustain the loss.

Accordingly, the order of the Secretary of Agriculture will be affirmed, upon preparation of findings of fact and conclusions of law. Appellant will pay costs, including an attorney's fee of $75.

[2] Congressional Record, House, May 7, 1930. Mr. Summers: "(The Bill) does not propose to accomplish anything which might not be accomplished under existing law. * * *" p. 8538. Nor does it attempt to remove the protection of existing susbtantive rights from any party to a transaction. It merely gives a new remedy against the dealer, commission man, or broker who offers a lower price for goods after they have arrived at their destination and are beyond the practical control of the grower, or resorts to some other practice against a grower who is helpless to protect himself because of the perishable nature of his commodities. p. 8540.

In the case at bar, the Court is not dealing with a grower, who is specifically excluded from liability under the P.A.C.A. 7 U.S.C.A. § 499a (6).

[3] As shown above, the Secretary of Agriculture took judicial notice of the fact that watery soft rot is a disease of field origin. Appellant has challenged the legality of such application of the doctrine of judicial notice. But the authorities relied upon by appellant to prove the impropriety of taking judicial notice of a government publication issued by a department of the government are not in point. They refer to courts, which do not profess to be informed on various specialized subjects, and not to administrative agencies which are experts in their own fields. It is certainly reasonable for the Secretary of Agriculture to take judicial notice of one of his own department's publications, and to base his findings of fact on such notice.