## KRAUS v. READING CO.

### No. 9521.

Circuit Court of Appeals, Third Circuit.

Argued March 4, 1948.

Decided March 30, 1948.

Robert L. Hood, of Newark, N. J. (George H. Detweiler, of Philadelphia, Pa., on the brief), for appellant.

Henry R. Heebner, of Philadelphia (Wm. Clarke Mason, of Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, MARIS and GOODRICH, Circuit Judges.

GOODRICH, Circuit Judge.

The plaintiff in this case is the widow and administratrix of Charles L. Kraus, who, for many years of his lifetime, was an employee of the Reading Railroad. Her claim against defendant is for damages caused by his death and is brought under the Federal Employers' Liability Act.[1] She alleges that her husband was killed while the train on which he was the engineer passed through one of the railroad's tunnels which is located about one half mile beyond the Perkasie stop on the Philadelphia-Bethlehem line of the Reading Rail-

---

[1] 45 U.S.C.A. § 51 et seq.

road. Her claim is predicated upon alleged negligence of the carrier in failing to provide a reasonably safe place to work due to a too close clearance between the engine's cab and the side of the tunnel in question.

■ The case was submitted to the jury under instructions which the plaintiff readily admits were detailed, clear, complete, and to which the plaintiff stated at the trial there was nothing to add. After eight hours of deliberation the jury returned a verdict for the defendant which verdict, described in plaintiff's words, was "reached intelligently without prejudice or bias." The plaintiff contends, however, that her case was such that a verdict for the defendant is clearly against the weight of the evidence. The railroad, on the other hand, states that her evidence, rather than being so compelling, is such that a verdict in her favor would not have been allowed to stand. With the latter contention we do not have to deal, our task being only to ascertain if the facts support the conclusion expressed in the verdict. In this situation we, of course, resolve all inferences and conflicts in the testimony in favor of the successful party at the trial.

This fatal accident occurred at about 1:45 P.M., May 20, 1944. It was a clear day. The train had left Perkasie and was picking up its speed as it approached the tunnel which is about one half mile beyond the station. This part of the road is an upgrade and there is a curve which begins before the tunnel and ends at a point about 326 feet within it. Near the mouth of the tunnel stood an employee named Kramer who observed engineer Kraus standing in the engine cab. This was a normal position for the operator. The fireman, Hone, was engaged in coaling the fire in preparation for the entrance into the tunnel. This operation was completed before the train got into the tunnel. When the train emerged from the tunnel, the fireman noticed that the train's speed increased instead of slowing down as customary in preparation for the stop at Quakertown. He looked out of his window and observed Kraus' jacket and what later proved to be his body hanging out of the right window of the engine cab. Hone crawled up to the cab, saw that Kraus was dead, and stopped the train.

There were no witnesses to this accident. The jury's only source of knowledge for ascertaining what actually happened, and likewise ours, is the circumstances surrounding the events of the few minutes in which it occurred. There were brush marks in the tunnel which indicated that something came into contact with its right side wall. These could have been made by the injured man's head because there were blood spots in the tunnel and the autopsy revealed injuries of the nature which might occur if there had been such contact. It was shown that the clearance between the side of the tunnel and the engine cab was thirteen inches in some places. There was testimony from one witness to the effect that when a train swayed the distance was, on occasions, six inches. There was no claim that the clearance between cab and wall was sufficient to permit a man to project his head or body outside the cab without danger of injury. On the other hand, there was no occasion for him to do so. There was also testimony to the effect that the smoke and cinders of a train while in the tunnel made the engineer's situation a temporarily unpleasant one. But two witnesses testified that there was a ventilation system and that on this occasion the condition was not unusual for this type of tunnel.

■ We think the evidence set forth is not of such a nature that a verdict for the defendant is unreasonable. There is no direct proof of what happened. For all we know, the unfortunate decedent may have fainted and fallen partially outside the cab. This is not a case where plaintiff's suggested inferences are the only possible or reasonable ones to be drawn. Here we have an experienced engineer who had made this trip with this type of engine on numerous occasions. He knew that there was no need to place his body in a position of danger for the testimony brought out that it was impossible to see anything ahead or to the side of him. And the testimony showed, also, that there was a window from which one could look forward from within the cab. We think, moreover, there is nothing in a thirteen inch static,

and six inch motion, clearance in this tunnel which permits us to declare as a matter of law that the place was an unsafe place to work. This is especially so in view of the evidence that the trip had been made on numerous occasions without mishap. See Morris, Proof of Safety History in Negligence Cases, 61 Harv.L.Rev. 205, 217, 218 (1948). A smoke filled tunnel is not a pleasant place to work, like a rose garden. But the testimony supports the jury's conclusion that it was not unsafe, especially in view of the fact that there was virtually nothing for the operator to do until the train passed through the tunnel and approached Quakertown. Furthermore, the witness Kramer testified that he walked through the tunnel behind the train without any protective device.

■ As has been stated by us on other occasions, the railroad is not subject to insurer's liability but is answerable only for those injuries caused in whole or in part by its negligence. The jury's verdict must stand unless the probative facts urged by the plaintiff were uncontradicted, accepted as true, capable of supporting only a verdict for the plaintiff, and if there were no facts favorable to the defendant. We do not have such a situation in this instance.

■ Plaintiff urges error in the excluding from evidence a company rule that trains proceeding in opposite directions were not allowed in the tunnel at the same time. The trial judge excluded the inquiry concerning the rule on the ground that there was no evidence that another train in the tunnel had anything to do with the fatal accident. Plaintiff says that the purpose of the question was to point out that the company could well make the place a single track tunnel. He says, further, that it would go a long way toward diluting the argument that the close clearance was a railroad necessity. We think the trial judge was right. The inquiry, if permitted, would interject a factor in the case not within the purview of the plaintiff's theory for recovery; that is, that the clearance on the right hand side of the engine cab was not sufficient. It was, we think, well within the judge's discretion to avoid the collateral issue whether a single track on an upgrade and curve would cause more ills than it cured. It could well be argued, for instance, that to bottleneck traffic on a single track through the tunnel would increase the danger of accident. And if single tracking through the tunnel was to be argued as a desirable precaution, why was not the elimination of smoke by electrifying the road an equally sound basis for argument? We are thus led into an indefinite area for collateral speculation.

The judgment of the District Court will be affirmed.