**ALEXANDER MARKETING CO. v. HARRISBURG DAILY MARKET.**

No. 3378.

United States District Court
M. D. Pennsylvania.

Nov. 18, 1949.

See also 9 F.R.D. 248.

William A. Bissell (of Stark, Bissell & Griffith), Scranton, Pa., Seward R. Moore, Neil A. Riley, Minneapolis, Minn., for plaintiff.

James W. Reynolds (of Shelley & Reynolds), Harrisburg, Pa., for respondent.

WATSON, Chief Judge.

This is an appeal by Harrisburg Daily Market from a reparation order of the Secretary of Agriculture wherein the Harrisburg Daily Market was ordered to pay to Alexander Marketing Company the sum of $1,339.10 with interest at five per cent. (5%) from June 15, 1947. The appeal was taken under Section 499g of Title 7 U.S.C.A., and the case was tried de novo by this Court without a jury.

At the trial, the complainant (appellee) introduced into the record the findings of fact and the order issued by the Department of Agriculture in this proceeding. These findings were that complainant is a corporation whose address is San Benito, Texas; that respondent is a partnership, whose address is Harrisburg, Pennsylvania, and who was licensed under the Perishable Agricultural Commodities Act, 7 U.S.C.A. § 499a et seq., during the time of the transaction herein involved; that, on June 6, 1947, respondent purchased from complainant one carload of Texas U. S. No. 1 tomatoes in Car NWX8393 at $4 per lug f. o. b. shipping point or $3,120.00 for the 780 lugs in the carload; that Shanpanier Brokerage Company, of Scranton, negotiated the contract between the parties; that the tomatoes were federally inspected at shipping point and were certified to be mature green and U. S. No. 1 grade with no decay; that the tomatoes were shipped from Athens, Texas, on June 6, 1947; that the shipment arrived at Harrisburg at 9:30 A.M. on June 11, 1947; that respondent requested federal inspection at 11:00 A.M. on June 11, 1947; that inspection was made at 7:40 P.M. on June 12, 1947; that this inspection certificate notes under "Condition" an average of 6 per cent. (6%) decay, ranging from 3 to 12 per cent. in most samples, none in some, the decay being mostly bacterial soft rot

in various stages; that this inspection certificate notes that an average of 8 per cent. (8%) of the tomatoes contained numerous discolored sunken areas; that the quality factors were within the 10 per cent. (10%) tolerance allowed in the U. S. No. 1 grade, and that the bunkers were empty of ice and the temperatures of the product in the doorways were 80 degrees at the top and 78 degrees at the bottom; that respondent rejected the shipment within one hour after receipt of this inspector's report; that complainant resold the tomatoes in this car at Philadelphia on or about June 16, 1947 at prices ranging from $2.75 to $3.25 per lug, with gross proceeds of $2,482.56, and net proceeds, after deductions for freight, selling charges and other expenses, of $1,780.90; that no payment has been made by respondent to complainant on account of this transaction; and that the formal complaint was filed within nine months after the cause of action accrues. The complainant also introduced into the record the original certificate of the inspection of this carload of tomatoes made at the point of shipment. This certificate states that these tomatoes were U. S. No. 1 grade on June 6, 1947 at Athens, Texas.

This prima facie case made out by the findings of the Secretary of Agriculture must prevail in this Court unless overcome by evidence submitted by respondent, notwithstanding the proceeding in this Court is not in the nature of an appeal from, or review of, that determination, but is a proceeding de novo.[1]

The respondent contends that, since the tomatoes were not U. S. No. 1 grade on arrival at Harrisburg, they could not have been in suitable shipping condition when they were placed on board the car in Athens, Texas. The respondent introduced into the record a copy of the inspection certificate from an inspection of the tomatoes made at Harrisburg on June 12, 1947, which certifies that the tomatoes failed to grade U. S. No. 1 at that time.

The inspection at Harrisburg was restricted to the upper two layers of tomatoes in the carload. The respondent called as a witness Eugene R. Pheil, a fresh fruit and vegetable inspector for the United States Department of Agriculture, who made the inspection of these tomatoes at Harrisburg. Pheil testified that these tomatoes failed to grade U. S. No. 1 at that time because of excessive discolored sunken areas and excessive decay. Pheil stated that, in his opinion, the injuries from which the sunken areas arose would not likely have occurred during the course of shipment, and that the increase in sunken areas and decay between the time of arrival of the tomatoes in Harrisburg and his inspection would be very slight. On cross-examination Pheil testified that he had no reason to doubt the correctness of the inspection certificate made from an inspection of these tomatoes at shipping point. Another witness called by the respondent, who was familiar with the normal running time of freight trains in various parts of the country, testified that the time this carload of tomatoes was in transit from Athens, Texas, to Harrisburg was "a better than normal run" and "a good run that couldn't be beat."

According to the provisions of the Perishable Agricultural Commodities Act, the Secretary of Agriculture may make such rules and regulations as may be necessary to carry out the provisions of the Act.[2] In defining trade terms these regulations provide that "f. o. b. shipping point" means that the produce quoted or sold is to be placed free on board the transportation agency at shipping point in suitable shipping condition, and that the buyer assumes all risk of damage and delay in transit not caused by the shipper.[3] The regulations further provide that "suitable shipping condition" means that the commodity, at the time of billing, is in a condition which, if the shipment is handled under normal transportation service and conditions, will assure delivery without ab-

1. Barker-Miller Distributing Co. v. Berman, D.C.W.D.N.Y.1934, 8 F.Supp. 60.

2. 7 U.S.C.A. § 499o.

3. 7 C.F.R. 46.24(i).

normal deterioration at the destination specified in the contract of sale.[4]

■ The evidence submitted by the respondent in this case did not overcome the prima facie case made out by the complainant to the effect that these tomatoes were federally inspected at shipping point, at which time they were certified to be U. S. No. 1 grade and in suitable shipping condition, as required by the terms of the contract between the parties.

Judgment will be entered against the respondent and in favor of the complainant for the amount of the difference between the sale price of the tomatoes and the net sum realized on their resale, for costs, and for a reasonable attorney's fee.

Findings of fact, conclusions of law, and direction for the entry of judgment and taxing of costs are filed herewith.

### Findings of Fact

1. Complainant, Alexander Marketing Company is a corporation whose address is San Benito, Texas. Respondent, Harrisburg Daily Market, is a partnership whose address is Harrisburg, Pennsylvania, and who was licensed under the Perishable Agricultural Commodities Act during the period covered by the Complaint.

2. On or about June 6, 1947, respondent purchased from complainant one carload of Texas U. S. No. 1 tomatoes in car NWX 8393 at $4 per lug f. o. b. shipping point, or $3,120.00 for the 780 lugs in the carload.

3. The tomatoes were federally inspected at shipping point, at which time they were mature green, U. S. No. 1 grade, with no decay, and were in a condition which assured delivery without abnormal deterioration at the destination specified in the contract, if handled under normal transportation service and conditions.

4. The tomatoes were shipped from Athens, Texas, on June 6, 1947, and arrived at Harrisburg at 9:30 A.M. on June 11, 1947. This was a better than normal time for shipment between these two points.

5. The tomatoes were federally inspected in Harrisburg at 7:40 P.M. on June 12, 1947, and were certified not to be U. S. No. 1 grade because of excessive discolored sunken areas and excessive decay.

6. Respondent rejected the tomatoes one hour after receipt of the inspector's report.

7. Complainant resold the tomatoes at Philadelphia on or about June 16, 1947 for a gross price of $2,482.56. After payment of freight, selling charges and other expenses in the amount of $701.66, complainant realized net proceeds of $1,780.90.

8. Complainant brought action under the Perishable Agricultural Commodities Act, and was awarded in that action a reparation order in the sum of $1,339.10, with interest at five per cent. (5%) from June 15, 1947 until paid.

9. Within thirty days after the final order of the Secretary of Agriculture, an appeal from the order was filed in this Court.

### Conclusions of Law.

1. This case is properly before this Court and this Court has jurisdiction under the Perishable Agricultural Commodities Act, 7 U.S.C.A. § 499g.

2. The contract between complainant and respondent, by the use of the term "f. o. b. shipping point", required this carload of tomatoes to be in suitable shipping condition when placed on board the car in Athens, Texas.

3. This carload of tomatoes was "in suitable shipping condition" when placed on board the car in Athens, Texas.

4. Respondent was bound by the terms of the contract to accept the tomatoes shipped.

5. Complainant is entitled to the amount of the difference between the sale price of the tomatoes and the net sum realized on their resale.

6. Complainant is entitled to a reasonble attorney's fee.

---

4. 7 C.F.R. 46.24(j).

## Order.

Now, November 18, 1949, the Clerk of this Court is directed to enter judgment in favor of Alexander Marketing Company and against Harrisburg Daily Market in the sum of $1,339.10, with interest at five per cent. (5%) from June 15, 1947 to this date, and the Clerk is further directed to tax costs and an attorney's fee of $250.00 against the Harrisburg Daily Market, the attorney's fee to be paid to Stark, Bissell and Griffith, and Moore and Riley, counsel of record for the Complainant, Alexander Marketing Company.