### CALIFORNIA FRUIT EXCHANGE v. HENRY et al.

#### Civ. A. No. 6866.

United States District Court
W. D. Pennsylvania.

March 7, 1950.

Harvey A. Miller and Harvey A. Miller, Jr., of Miller & Miller, Pittsburgh, Pa., for complainant.

George S. Goldstein, and Michael E. Catanzaro of Pittsburgh, Pa., for respondents.

GOURLEY, District Judge.

The proceeding comes before the Court on appeal from the reparation award entered by the Secretary of Agriculture under the Perishable Agricultural Commodities Act. 7 U.S.C.A. § 499g.

We are in reality concerned with two separate causes of action:

(a) California Fruit Exchange against Morris Henry and Anthony Spracale, partners, trading as Spracale Fruit Company, for the amount of $2119.40, with interest from October 22, 1946.[1]

(b) Counterclaim of Morris Henry and Anthony Spracale, trading as Spracale Fruit Company, against California Fruit Exchange for the amount of $1125.50 with interest from October 22, 1946.[2]

The written contract which gives rise to the causes of action was executed and to be performed in Pennsylvania, and related to Emperor Grapes, U. S. No. 1 Table Grade, Dependable Brand.

Under Pennsylvania Conflict of Laws rule, interpretation of a contract in diversity cases is determined by the law of the place of contracting. Faron v. Penn

1. California Fruit Exchange will be hereinafter referred to as "California."

2. Morris Henry and Anthony Spracale, trading as Spracale Fruit Company, will be hereinafter referred to as "Spracale."

Mutual Life Ins. Co., 3 Cir., 176 F.2d 290; Restatement, Conflict of Laws, Section 348; Levy v. Levy, 78 Pa. 507, 21 Am.Rep. 35; Newspaper Readers'· Service v. Canonsburg Pottery Co., 3 Cir., 146 F.2d 963.

Since jurisdiction does not arise through diversity, the rule just expressed would be subject to the provisions of the Perishable Agricultural Commodities Act.[3]

■ While additional protection and remedies are provided to shippers of perishable commodities under the P.A.C.A., the statute was not intended to repeal the law of sales or to destroy the rights and liabilities of contracting parties thereunder. LaRoy Dyal Co. v. Allen, 4 Cir., 161 F.2d 152; A. J. Conroy, Inc. v. Weyl-Zuckerman & Co., D.C., 39 F.Supp.. 784.

A verdict was returned in favor of California in the amount of One Dollar and against Spracale.

The matters before the court relate to:

(a) Motion for arrest of judgment entered in favor of California in the amount of $1.00, and for judgment notwithstanding the verdict to be entered in favor of California and against Spracale in the amount of $2119.40, with interest from October 22, 1946.

. (b) Motion for new trial filed on behalf of California.

. (c) Motion to set aside verdict or for arrest of judgment in favor of California and against Spracale, and to enter judgment in favor of Spracale.

(d) Motion to set aside verdict or arrest of judgment in favor of California and against Spracale, and to enter judgment on the counterclaim in favor of Spracale and against California in the amount of $1125.00, with interest from October 21, 1946.

### Statement of Facts.

California and Spracale negotiated a sale through the Tri-State Sales Agency at Pittsburgh, Pennsylvania, on October 3, 1946, for two carloads of Emperor Grapes, U. S. No. 1 Table Grade, Dependable Brand, f.o.b. shipping point. One carload was shipped on October 8, 1946, and the other on October 11, 1946. Each of the cars was federally inspected and it was certified that the defects in each instance were average and within the grade tolerance and that decay was generally less than one-half of one percent.

The first car arrived in Pittsburgh on October 17, 1946. Federal inspection was restricted to the top layer, and it was found, as to decay, that from the samples inspected the average of ½ of 1% to 5%, many none, average 1% gray mold rot, generally nesting. The second car arrived in Pittsburgh on October 22, 1946. Federal inspection and findings were in substance similar to the inspection of the first car.

Both cars of grapes were rejected by Spracale. The first car was reconsigned to Philadelphia, Pennsylvania, and the second car to New York. The grapes were sold and California's claim is based on the loss sustained.

California contends:

(1) That the grapes complied with the contract.

(2) That the refusal to accept by Spracale was without cause or justification.

(3) That after the grapes were rejected, they were sold to the best advantage.

(4) That markets were selected where the best prospects and prices prevailed.

(5) That California minimized the loss through the extension of most reasonable effort.

Spracale contends:

(1) That California failed and neglected to ship the type and quality of merchandise as provided by the terms of the contract.

(2) That the condition which existed did not arise through transportation and that the grapes had a latent defect.

(3) That the grapes when delivered to Pittsburgh, Pennsylvania, contained a gray mold rot condition which was of field origin.

(4) That such condition of the grapes constituted a failure to deal in accord-

3. Perishable Agricultural Commodities Act will be hereinafter referred to as "P.A.C.A."

ance with the terms of the contract, and Spracale is not liable for any loss sustained by California.

(5) That Spracale is entitled to recover for the loss which it had suffered under the contract as a result of the failure of California to comply with the terms thereof.

### Legal Principles Involved.

The purpose of the P.A.C.A. was primarily to eliminate unfair practices in the marketing of perishable agricultural commodities in interstate commerce in the case of a declining market by making it difficult for unscrupulous persons to take advantage of shippers by wrongful rejection of the goods upon arrival at a point where it is expensive and impractical for the shipper to enforce his legal rights. To effectuate this purpose, Congress did not go so far as to make rejection by buyers unlawful altogether. Instead, it made rejection of shipments of perishable agricultural commodities by buyers · unlawful "without reasonable cause." LeRoy Dyal Co. v. Allen, supra; Joseph Martinelli & Co. v. Simon Siegel Co., 1 Cir., 176 F.2d 98.

A prima facie case made out by the findings of the Secretary of Agriculture must prevail in this court unless overcome by evidence submitted by Spracale, notwithstanding the proceeding in this court is not in the nature of an appeal from, or review of determination, but is a proceeding de novo. Barker Miller Distributing Co. v. Berman, D.C., 8 F.Supp. 60; Alexander Marketing Co. v. Harrisburg Daily Market, D.C., 87 F.Supp. 124.

The Secretary of Agriculture may make such rules and regulations as may be necessary to carry out the provisions of the Act. 7 U.S.C.A. Section 499o.

7 C.F.R. 46.24(i) of the Regulations promulgated by the Secretary of Agriculture provides as follows: "F.o.B. * * * means that the produce quoted or sold is to be placed free on board the boat, car, or other agency of the through land transportation at shipping point, in suitable shipping condition * * * and that the buyer assumes all risk of damage and delay in transit not caused by the shipper, irrespective of how the shipment is billed. The buyer shall have the right of inspection at destination before the goods are paid for, but only for the purpose of determining that the produce shipped complied with the terms of the contract or order at time of shipment, subject to the provisions covering suitable shipping condition. Such right of inspection shall not convey or imply any right of rejection by the buyer because of any loss, damage, deterioration, or change which has occurred in transit."

The Regulations further provide that "suitable shipping condition" means that the commodity, at the time of billing, is in a condition which, if the shipment is handled under normal transportation service and conditions, will assure delivery without abnormal deterioration at the destination specified in the contract of sale. 7 C.F.R. 46.24(j); Alexander Marketing Co. v. Harrisburg Daily Market, supra.

A motion for a directed verdict or judgment notwithstanding the verdict under the Federal Rules raises a question of law only; that is whether there is any evidence which, if believed, would authorize a verdict against the defendant and the trial court in considering such motion does not exercise any discretion but makes only a ruling of law. Marsh v. Illinois Central R. Co., 5 Cir., 175 F.2d 498; Grayson v. Deal et al., D.C., 85 F.Supp. 431.

In passing upon a motion to set aside a verdict for plaintiff and to enter judgment for the defendant, evidence including all reasonable inferences to be drawn therefrom must be taken in the light most favorable to the plaintiff and all conflicts must be resolved in his favor. Waggaman v. General Finance Co. of Philadelphia, Pa., Inc., 3 Cir., 116 F.2d 254; Schad et al. v. Twentieth-Century Fox Film Corp., et al., 3 Cir., 136 F.2d 991; Lukon v. Pennsylvania R. Co., 3 Cir., 131 F.2d 327; Meyanberg v. Penna. R. Co., 3 Cir., 165 F.2d 50; Kraus v. Reading Co., 3 Cir., 167 F.2d 313; O'Brien v. Public Service Taxi Co., 3 Cir., 178 F.2d 211; Fore v. Southern Ry. Co., 4 Cir., 178 F.2d 349.

■ Upon a motion for a directed verdict, the evidence must be viewed in the light most favorable to the party against whom the verdict would be directed, and all conflicts must be resolved in his favor. Reno Sales Co., Inc. v. Pritchard Industries, Inc., 7 Cir., 178 F.2d 279; Aetna Casualty & Surety Co. v. Yeatts, 4 Cir., 122 F.2d 350.

■ The court cannot concern itself with the credibility of the witnesses or the weight of the evidence. Roth v. Swanson, 8 Cir., 145 F.2d 262.

■ The court is not free to reweigh the evidence, and set aside the jury's verdict merely because the jury could have drawn different inferences or conclusions, or because the court regards another result as more reasonable. Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520.

■ Where uncertainty arises from a conflict in the testimony, or because, the facts being undisputed, fair-minded men will honestly draw different conclusions from them, the question is not one of law but of fact to be settled by the jury. Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 74 L.Ed. 720.

### Discussion

As to the efforts extended by California to dispose of the grapes after rejection by Spracale, it is contended that the evidence presented by California is uncontradicted and unimpeached by anything appearing in the record, and is not inherently improbable. That the Court was obliged to accept it as true and charge the jury that no evidence existed in the record to disprove that the claimant did not secure the highest available price for the merchandise after its rejection by Spracale.

■ The testimony introduced by California was by way of deposition. Said witness was interested since he had been employed by California as their auctioneer and price sales manager for a number of years. Even if the rule prevails in the federal courts that a witness' uncontradicted testimony must be accepted as true, where a witness has an interest, the believability of the witness' testimony remains a question of fact for the jury. Broadcast Music v. Havana Madrid Restaurant Corp., 2 Cir., 175 F.2d 77; 8 A.L.R. 796, et seq.

■ The Court could not, therefore, instruct the jury, as a matter of law, to return a verdict in favor of California and against Spracale for the amount of said claim.

Section 2 of the P.A.C.A., 7 U.S.C.A. § 499b (2) reads in part as follows: "It shall be unlawful in * * * any transaction in interstate * * * commerce * * * for any dealer to * * * fail to deliver in accordance with the terms of the contract without reasonable cause any perishable agricultural commodity * * * sold * * * in interstate * * * commerce by such dealer".

■ Where food products do not meet the contract requirements, the shipper must bear the loss resulting from deterioration in transit and the fact that the defect in the commodity is not discernible at the point of shipment does not alter the liability which falls upon the shipper by reason of the implied warranty which is attached to the goods. However, since title and risk pass to the buyer at the point of shipment under a sale, such as existed in this case, f. o. b. shipping point, if the goods met the contract requirements at the point of shipment, any normal deterioration losses which arose in transit would fall upon the buyer. A. J. Conroy, Inc. v. Weyl-Zuckerman & Co., supra; Steel City Fruit Co. v. Monheim's Wholesale Produce Co., D.C., 64 F.Supp. 275.

Both parties offered to establish the custom in the trade to dispose of deciduous fruits when rejected under the circumstances which existed.

■ The existence of a usage or custom can only be proved by numerous instances of actual practices, and not by the opinion of a witness. Aurand v. Universal Carloading and Distributing Co., 131 Pa. Super. 502, 200 A. 285; Wilson Distilling Co. v. Foust Distilling Co., D.C., 60 F.Supp. 373.

One who would establish a custom or usage has the burden of proving it by evidence so clear, uncontradictory and distinct as to leave no doubt as to its nature and character. Doyle v. Atlantic Refining Co., 357 Pa. 92, 53 A.2d 68; Everly v. Shannopin Coal Co., 139 Pa.Super. 165, 11 A.2d 700.

A practice to arise to the dignity of a custom so as to enter into and form a part of a contract must possess those elements of certainty, generality, fixedness and uniformity as are recognized by the law as essential to constitute a custom. A loose variable custom or discretionary practice does not arise to the dignity of a custom so as to control the rights of the parties to a contract. Doyle v. Atlantic Refining Co., supra; Makransky v. Weston, 304 Pa. 383, 155 A. 741; Tate-Jones & Co., Inc. v. Union Electric Steel Co., 281 Pa. 448, 126 A. 813; Everly v. Shannopin Coal Co., supra; Etna Forge and Bolt Co. v. Youngstown Sheet & Tube Co., 3 Cir., 282 F. 786.

Further a loose and variable practice will not be allowed to control the rights of the parties, nor will an alleged usage which leaves some material element to the discretion of the individual. Sickelco v. Union Pac. R. Co. et al., 9 Cir., 111 F.2d 746.

On the basis of said rule, no custom was established by either party as to the practice which was followed where a car of deciduous fruit is rejected in the Pittsburgh market.

Where the purchaser of goods refuses to accept them, the seller has a reasonable time to dispose of them in the nearest available market. Huessener v. Fiskel & Marks Co., 281 Pa. 535, 127 A. 139; Rees v. R. A. Bowers Co., 280 Pa. 474, 124 A. 653.

In the absence of a market value standard, a vendor of goods which the purchaser declines to accept under his contract is entitled to the difference between the contract price and the amount realized by the vendor through a resale made in good faith with diligent effort.

U. S. v. Swift & Co., 270 U.S. 124, 46 S. Ct. 308, 70 L.Ed. 497.

As to the motions of California and Spracale for the entry of judgment in their favor, the facts and all reasonable inferences must be considered in the light of the P.A.C.A. and the law of sales.

I believe the question raised by each of the parties in their motions for the entry of judgment notwithstanding the verdict resolved itself into a question of fact for the determination of the jury.

The motion of California for arrest of judgment and the entry of judgment notwithstanding the verdict in favor of California and against Spracale in the amount of $2119.40, with interest from October 22, 1946, is refused.

The motion of Spracale for arrest of judgment and the entry of judgment notwithstanding the verdict in favor of Spracale is refused.

The motion of Spracale on the counterclaim for arrest of judgment and to enter judgment notwithstanding the verdict in favor of Spracale and against California in the amount of $1125.00, with interest from October 21, 1946, is refused.

As to the motion for new trial filed by California, there is only one question which requires or justifies discussion.

The jury agreed to a sealed verdict and separated. After the sealed verdict had been agreed upon and the jurors were departing, counsel for Spracale learned through inquiry made of one of three jurors as to the verdict which had been reached. Counsel communicated the information that he had secured to his client, and the information came to the attention of counsel for California. The matter was called to the attention of the court by counsel for California prior to the return of the verdict in open court the following morning, and as a result thereof the Court interrogated each of the jurors and counsel for Spracale as to what had transpired.

A juror may be interrogated as to acts or declarations outside of the jury room where evidence of such acts has

been given as ground for a new trial. Liggett & Myers Tobacco Co. v. Imbrag-uglia, D.C., 73 F.Supp. 909.

Counsel for Spracale stated that while waiting for an elevator, and out of curiosity inquiry was made of one of the women on the jury as to the verdict which had been reached. He stated that the conversation occurred with one of three women who he could not identify and that the inquiry which he made was, "What did you do in the case?" One of the women answered and said that they had found the verdict for California for $1.00. Counsel said that he believed that the woman had answered his question in jest and that he remarked to her, "Oh, you are just kidding me" and no further question was had relative to the verdict. Only one juror admitted any conversation with counsel for defendant. Her explanation was that Spracale's counsel made inquiry, "Did you come to a verdict?" And the juror's answer was, "I quit." After all of the jurors were interrogated by the court, the verdict was opened and announced in open court.

In the interests of proper and impartial administration of justice, thorough consideration should be given the actions of counsel for Spracale.

The practice of allowing the jury to seal a verdict and then separate is very general throughout the United States. All of the authorities agree that the only verdict is that which the jury announces orally in court, and which alone is received and recorded as the jury's finding. Kramer v. Kister, 187 Pa. 227, 40 A. 1008, 44 L.R.A. 432.

A sealed verdict is a mere agreement reached by jurors and does not become general until it is read into the record and the jurors are discharged by the court.

Jurors are not concluded by a sealed verdict, which is only an informal memorandum not a part of a record, and from which any of them have a right to dissent when the verdict is rendered in open court. It is only the oral verdict, when received and recorded by the court, which constitutes a valid and legal verdict. Havranek v. Pittsburgh et al., 344 Pa. 375, 378, 25 A.2d 703.

A jury can be polled after a sealed verdict is returned in open court. Kramer v. Kister, supra.

No request was made by either party for leave to poll the jury.

It must be remembered that an attorney is an officer of the court.

If an officer of the court, whether or not he has charge of the jury, makes statements to a jury during their deliberation which are calculated to influence their verdict, it is ground for a new trial. Mattox v. U. S., 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917.

It is the duty of jurors and counsel representing a party litigant to keep themselves removed from all influences which can cast a suspicion upon the integrity of a jury's verdict. However, the court should not be swift to grant a new trial on account of irregularities not attended with any intentional wrong where it is made satisfactorily to appear that the party complaining has not and could not have sustained any injury by the actions committed. 64 C.J. Section 803, page 1018.

It is gross misbehavior for any person to speak to a juror or for a juror to permit conversation concerning the cause, after he is summoned and before the verdict. It would be an injury to the administration of justice not to declare that it is gross misbehavior for a person to speak to a juror or for a juror to permit any person to converse with him respecting the cause which he is trying at any time after he is summoned and before the verdict is delivered. Baline's, Lessee v. Chambers, 1 Serg. & R. 169.

The courts look with suspicion upon any communications between parties to a suit or their counsel and the jury impaneled to try it; and if such communication is had and it appears that a conversation was had about the suit, or the communication is not explained satisfactorily, it will, in itself, be ground for a new trial. If, when explained, however,

it can be seen that in the communciation nothing was said about the case and nothing was done for the purpose of influencing the mind of the jury, and that the communication or conversation had no influence on the verdict which was reached, no ground exists to set the verdict aside for the reason that said comment could not have been prejudicial.

The trial of the proceeding was greatly prolonged in view of the issues which existed in the case. It was conducted on both sides by very capable, alert and learned counsel, with numerous and many objections, and in some respects became a fascinating contest of wits between counsel. At times the personalities of counsel were allowed to interfere with their sound clear judgment. Members of the bar have great liberty and high privileges in the assertion of their client's rights, but on the other hand they have equal obligations as officers of the court in the administration of justice to maintain and keep their professional conduct free from suspicion or criticism.

■ If the verdict reached by the jury was in any other way than by a conscientious observance of the oath which every juror took, it would be the duty of the court to grant a new trial. United States v. Brandenburg, 3 Cir., 162 F.2d 980, 983.

■ The authorities on the question are somewhat limited. A new trial should not be granted because of irregularities in the conduct of a juror or counsel unless it is made to appear that the alleged misconduct was prejudicial to one of the party litigants. Liggett & Myers Tobacco Co. v. Imbraguglia, supra; Alexander v. Commonwealth, 105 Pa. 1; Commonwealth v. Manfredi, 162 Pa. 144, 29 A. 404; McCoy v. Shoemaker, 24 York Leg.Rec., Pa., 165; Wiest v. Layendyk, 73 Mich. 661, 665, 41 N.W. 839; Zageir v. Southern Express Co., 171 N.C. 692, 89 S.E. 43; Tillett v. Norfolk Southern R. R. Co., 166 N.C. 515, 520, 82 S.E. 866.

No inferences should be drawn from what has been stated that the court is condoning the improper conduct which occurred.

Any departure from the rule that "after a jury has retired, nothing further should reach it in any form whatsoever unless by order of the court in strict conformity with established jury procedure" has a tendency to lessen respect for the administration of justice and the dignity that should surround jury trials.

However, assuming that such may have been the effect of the transgression complained of, and however much such possible effect is to be deplored, it is not to be confused with the question I am called upon to determine.

Was the transgression of such a character as likely to be prejudicial to the opposing party litigant?

■ No basis exists for determining that it was. The action of counsel for the defendant was irregular, uncalled for and severely criticized. It is hoped that such an occurrence will never again be permitted to arise in this court. If any possible prejudice could have arisen to the opposing litigant, a new trial would be granted and appropriate disciplinary action taken against the offender.

Spracale was in no respect shown to have participated in said act or to have planned, suggested, prompted or approved the act. The verdict had been agreed upon, signed and sealed, to be delivered to the court the next morning. The verdict slip was in the possession of the foreman of the jury who was not involved in the conversation with Spracale's counsel. It is not claimed that any change was made in the verdict and no benefit could have been derived by Spracale.

In view of the fact that the jury had reached a sealed verdict at the time the conversation occurred between defendant's counsel and one of the jurors, it would not have been possible for the conversation which took place to affect the mind of one or more of the jurors.

I find nothing which would lead to the belief that the verdict was reached in any way other than by a conscientious observance by the jurors of the oath which was taken, and in view thereof I do not believe

that grounds exist for awarding a new trial. U. S. v. Brandenberg, supra.

A motion to grant a new trial is governed by Rule 59 of the Federal Rules of Civil Procedure, 28 U.S.C.A., and is not subject in any way to rules of state practice. Aetna Casualty & Surety Co. v. Yeatts, 4 Cir., 122 F.2d 350.

As to all other questions raised, it is the duty of the court to grant a new trial only if the court is of the opinion that the verdict is against the clear weight of the evidence, or is based upon evidence which is false or will result in a miscarriage of justice. With this standard in mind, I have given careful attention to the problem. Suffice to say, it does not appear to me a new trial is justified. The weight to be given the testimony, the inferences and deductions to be drawn therefrom, was for the jury to appraise and to accredit or reject.

Further, I find no error in the rulings on the admissibility of evidence or the general charge of the court.

As to the refusal of the court to submit requested instructions, the points of law contained therein were covered in the general charge of the court. Such refusal does not constitute prejudicial error. Chicago & N. W. Ry. Co. v. Carl, 8 Cir., 178 F.2d 497.

The motion of California for a new trial is refused.

An appropriate order will be filed.