John P. CONDAKES et al.

v.

David WOLF et al.

Civ. A. No. 62–239.

United States District Court
D. Massachusetts.

Nov. 20, 1962.

D. Jerome Donovan, Dedham, Mass., for plaintiffs.

Norman B. Silk, Ely, Bartlett, Brown & Proctor, Boston, Mass., for defendants.

FRANCIS J. W. FORD, District Judge.

This is an appeal under 7 U.S.C.A. § 499g(c) from a reparation order of the Secretary of Agriculture directing appellants to pay to appellees the sum of $417.12, the unpaid balance on the contract price of a carload of cantaloupes. The pleadings, findings and conclusions and orders of the Secretary in the proceeding before him have been certified and filed in court, and at the trial in this court additional evidence was offered by the appellants.

Appellants are a partnership doing business in Boston and appellees a partnership doing business in Philadelphia. On July 11, 1960 appellees sold to appellants a carload of cantaloupes for a total price of $2,549.75. This car was then in transit, having been shipped on July 6, 1960 from California consigned to appellees in Philadelphia. The sale was negotiated by a New York broker, Ben Goldsamt, who was acting on behalf of appellees. Goldsamt notified the Wolfs of the sale and instructed them that the car was to be diverted for delivery to the appellants at Boston via the New Haven Railroad. On the same day, July 11, at 11:25 A.M. appellees gave a diversion order to the Pennsylvania Railroad Company, directing diversion in the exact terms of Goldsamt's instructions. The car was received by the Pennsylvania line at East St. Louis on July 11 at 6 A.M. and was diverted on arrival at Enola, Pennsylvania and was delivered to appellants in Boston on July 15. Under normal shipping schedules a car shipped from California on July 6 would have reached Boston on July 14. The one-day delay in this case was caused by the necessity of transferring the car from one train to another at Enola. Appellants have paid a total of $2,132.63, and contend that they are entitled to retain the balance of $417.12 which represents the loss they claim was caused by the delay in delivery of the car because of a fall in the price of cantaloupes at Boston between July 14 and July 15.

The sole issue between the parties is as to the adequacy of the diversion order. It is appellants' contention that the order was inadequate because it did not contain any information as to routing, that is, it did not inform Pennsylvania of the route over which it was being shipped. There was evidence that shipments from California may be received by the Pennsylvania from connecting

lines at three points, St. Louis, Chicago or Logansport, Indiana. If a diversion order is given to the railroad in sufficient time containing the routing information from which it can be determined at which point the car will be received, notice of the diversion order is sent to that point and the car can there be placed in the proper train for its new destination. If the diversion order contains no routing information, notice of the order is sent to Enola. Cars from all three receiving points come to Enola. Those already diverted to the proper train for their destination can be sent on their way at once, but where the diversion order has to be carried out by removing the car from one train and placing it in another at Enola, a delay can result at that point. This is what happened in the case of the car involved here.

Appellees contend first of all that they did give the railroad routing instructions. The basis for this contention is that Pennsylvania's acknowledgment of the diversion order has the notation "out of K. City on the 10th." Assuming that this information was derived from appellees' oral order to the railroad, there is no evidence as to what this note would tell the railroad as to the point at which it would receive the car. On the contrary, there is the fact that the order was sent to Enola, and that if the order had contained sufficient routing information to show where the car would be received, the normal railroad procedure would have been to send the order to that point. On the evidence it cannot be found that appellees' diversion order included routing information sufficient to enable the railroad to divert the car at the point where it was received.

Appellees' principal contention, however, is that they fully satisfied their obligation under the contract to divert the car to appellants by giving the railroad a diversion order in the exact terms of the instructions received from appellants' agent Goldsamt. Appellants' position is that appellees were under a duty to include full routing information in the order because there was a custom or usage in the trade that such information is to be included in a diversion order for carloads of produce sold while in transit as this one was.

■ Clearly, appellees did everything that was required of them under the express terms of the contract. If appellants assert the existence of a custom or usage which would impose on appellees any additional duty beyond these express terms, the burden is on them to prove the existence of such a usage. California Fruit Exchange v. Henry, D.C., 89 F. Supp. 580, 587, affirmed, 3 Cir., 184 F.2d 517; Shipley v. Pittsburgh & L. E. R. Co., D.C., 83 F.Supp. 722, 750; H. W. Kastor & Sons Advertising Co., Inc. v. Grove Laboratories, Inc., D.C., 58 F. Supp. 1011.

■ The only evidence offered by appellants as to the alleged trade usage was the testimony of George P. Condakes, the buyer and general manager of appellants, that the alleged custom did exist. The only other witness for appellants, one Barrett, a sales representative of the railroad, testified nothing as to the existence of such a custom. His testimony as to the procedure of the railroad in handling diversion orders indicates that such orders were received both with and without routing information. The letter of F. L. Hampton, freight agent of the railroad, to appellees, included in the exhibits in the proceedings before the Secretary, states in part: "Diversion order was received in adequate time to accomplish diversion at Enola, Pa., and as we have previously stated, diversion was protected at that point which is the established diversion point for shipments destined east thereof." On the evidence it cannot be found that appellants have sustained the burden of proving that there was any custom or usage of the trade which would impose on appellees any duty to include routing information in their diversion order.

■ Furthermore, there is no evidence that failure to include such routing information in the order actually caused the delay in this case. The car was re-

ceived by the railroad at 6 A.M. on July 11. The diversion order, although given by appellees promptly on receipt of instructions from Goldsamt was not given until 11:25 A.M. In the absence of any evidence as to the railroad's time schedule for handling cars at East St. Louis, it is only a matter of speculation whether the order, even if it had included full routing information, was received in time to enable the railroad to effectuate diversion at that point rather than at Enola.

The order of the Secretary is affirmed and judgment will be entered for appellees in the amount of $417.12 with interest and costs including a reasonable attorney's fee in the amount of $75.00.